DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Bryant L. Boyd, appeals the judgment of the Ottawa County Court of Common Pleas. On March 1, 2006, a grand jury charged appellant with a ten count indictment: two counts of trafficking cocaine, both fifth-degree felonies; three counts of complicity to trafficking drugs, each fifth-degree felonies; two counts of trafficking cocaine in the vicinity of a school, both fourth-degree felonies; one count of trafficking crack cocaine, a third-degree felony; possession of a dangerous drug *Page 2 
(hydrocodone), a fifth-degree felony; and one count of engaging in a pattern of corrupt activity, a felony of the first degree. Appellant entered a plea of not guilty and the matter proceeded to trial.
 {¶ 2} At the jury trial, the following evidence was adduced.[1] The evidence included recordings made of each of eight controlled buys of cocaine and crack cocaine made by confidential informants ("CI") and testimony by each CI. Two agents with the Ottawa County Drug Task Force testified to the procedures involved in making controlled buys of cocaine using CIs.
 {¶ 3} First, agent Carl Rider testified to his supervision of five controlled buys of cocaine using a confidential informant. His practice was to give a CI money with recorded serial numbers, fit the CI with a microphone transmitter, transport the CI to the buy location, listen to the transaction on a receiver, meet the CI, obtain the drugs and search the CI to ensure that no drugs were kept. Recordings made of each transaction were admitted into evidence and played for the jury.
 {¶ 4} On January 6, 2006 ("first count"), Rider's CI arranged a controlled buy at a home of one Joe Wickerham. The CI was given $100 in cash to buy cocaine from Lawrence David Conyer, an associate of appellant. Immediately after the transaction, appellant told the CI that he could "rock it up," meaning that he could mix the powder *Page 3 
cocaine into crack cocaine. Appellant and the CI discussed the CI's background for approximately nine minutes; appellant said he had "caught a case before," meaning he had been in trouble for drug cases in the past, and was curious about the CI. When the CI returned to the waiting agents, he gave them a package of white powder, later determined by laboratory testing to be 0.68 grams of powder cocaine.
 {¶ 5} Rider supervised four subsequent controlled buys of cocaine, during which the same procedures were followed. On January 9, 2006 ("second count"), the CI arranged a controlled buy at Wickerham's house. This time, appellant took the CI's money directly from the CI and handed him three packets; these three packets were later determined by testing to contain 0.41 grams of cocaine in total. On January 11, 2006 ("third count"), the CI arranged another controlled buy at Wickerham's house, which yielded a package later determined by testing to contain 0.18 grams of cocaine. The CI called Conyer and asked him to deliver cocaine to Wickerham's for purchase; Conyer arrived with appellant.
 {¶ 6} After the third count, Rider showed the CI a photo array of six photographs, one of which was appellant. The CI identified appellant as the person who had arrived at Wickerham's house with Conyers and who had sold him the cocaine during each controlled buy.
 {¶ 7} The CI arranged yet another controlled buy for Rider on January 24, 2006 ("fourth count"). The CI told Rider he could purchase crack cocaine from a woman named Berna Carroll. The same procedures were followed to prepare the CI, who was *Page 4 
then placed on a public park bench to wait for Carroll. Meanwhile, agents who knew Carroll's identity watched outside her residence and followed her from her residence to the CI. The CI and Carroll, followed by Rider, drove to an alley where they picked up appellant. The three drove to David Conyer's house, and Carroll and appellant went inside. Rider testified that the CI reported that he saw Carroll give appellant his buy money before they entered Conyer's house. Carroll returned to the car without appellant; Carroll gave the CI a package; she told the CI that from then on the CI would have to go to the other residence. The package tested as containing 0.51 grams of cocaine.
 {¶ 8} On January 25, 2006 ("fifth count"), the CI arranged another controlled buy using Carroll. Rider instructed the CI to try to avoid being taken to Wickerham's house again. After the CI was prepared and met Carroll, however, Carroll insisted that the buy be conducted at Wickerham's. The CI gave Carroll the money, and, as with Conyers before, Carroll took the CI's money into a bathroom with appellant; she returned from the bathroom and gave the CI a package later determined to contain 0.29 grams of cocaine.
 {¶ 9} On cross-examination, Rider acknowledged never having witnessed appellant, either visually or orally from the tapes, taking money from the CI or giving cocaine to the CI. Instead, with the exception of the second buy, the CI had identified appellant as the person who had given the cocaine to either Conyers or Carroll to give to him. The usual procedure at Wickerham's was for the CI to contact either Conyers or Carroll, and for Conyers or Carroll to go into a bathroom with appellant, out of view of the CI. Conyers or Carroll would take the CI's money, enter the bathroom with appellant, *Page 5 
exit the bathroom and return with cocaine or crack cocaine to give to the CI. Rider visually identified appellant only during the fourth count, when appellant rode in the backseat of Carroll's car with the CI.
 {¶ 10} Billy Burel, the CI who worked with Rider, testified to his involvement in the five controlled buys. His testimony was essentially identical to Rider's, with one exception: With respect to the fourth buy, he repeatedly asserted that he never saw Carroll give appellant his buy money outside the apartment. For the second buy, he testified that he was able to directly give appellant money and appellant directly gave the CI the cocaine. For the other four transactions, however, he testified that either Conyers or Carroll would take his money, go into a bathroom or Conyer's apartment with appellant, and either Conyers or Carroll would then return with the cocaine. During the time he spent at the buy residence with Conyers and Carroll, he never saw Conyers or Carroll sell drugs to any other person and both Conyers and Carroll acted as "go-betweens," taking money to appellant and then delivering cocaine for appellant.
 {¶ 11} Frederick Nowak, another CI, worked with agent St. Clair and performed three controlled buys under his supervision. St. Clair followed the same procedures as Rider to prepare the CI for each buy, giving Nowak $200 for each transaction. Nowak knew appellant from previous personal crack cocaine purchases at a neighbor's residence. For each of the three controlled buys, Nowak would telephone appellant, who would come to Nowak's residence and directly sell him approximately $200 worth of crack cocaine. The three transactions were nearly identical; Nowak would place a plate and *Page 6 
$200 in cash on a table, and in exchange, appellant would place pieces of crack cocaine on the plate for Nowak. After appellant left his apartment, Nowak put the crack cocaine into a small plastic bag and gave it to St. Clair.
 {¶ 12} St. Clair, a detective with the Ottawa County Drug Task Force, supervised the controlled buys made by CI Nowak. He testified to utilizing the same procedures as Rider before and after each controlled buy. After obtaining the yield from each buy, he sent them to the BCI laboratory. The first buy yielded 0.72 grams of crack cocaine; the second buy yielded 1.21 grams of crack cocaine; the third buy yielded 0.69 grams of crack cocaine (sixth, seventh, and eighth counts).
 {¶ 13} St. Clair also testified to the location of Nowak's apartment, where the last three controlled buys were performed. He testified that the distance from the "middle" of Nowak's property to the "school property" measured 264 feet. The measurement was performed by another detective (who did not testify) using a topographic computer program. He also testified that the "school" was approximately one-half block from Nowak's apartment. The state submitted no documentary evidence from this computer program to support the measurement, and St. Clair did not state the name of the "school" or describe the type of "school property."
 {¶ 14} Richard Vance, an officer with the Port Clinton Police Department, arrested appellant on February 13, 2006, at agent Rider's verbal direction. This occurred shortly after Nowak's third and last controlled buy had concluded. Nowak told Rider that appellant had left his apartment after the buy, and was following him. Rider informed *Page 7 
Vance that appellant and a female companion were in a vehicle in his patrol area. Vance located the vehicle, activated his cruiser's overhead lights, and effected a stop. Vance approached the passenger side of the vehicle, identified appellant, and placed him under arrest. He performed a pat-down search which yielded a large roll of bills, which he gave to Officer Barton. Barton had responded to the scene separately from and subsequent to the stop; Barton's testimony regarding his involvement in the stop was essentially duplicative.
 {¶ 15} When Rider arrived on the scene, Rider instructed Vance to search appellant by asking him to remove his shoes. When appellant did so, Vance found a plastic bag containing partially crushed white pills. Laboratory testing determined the bag contained 3.94 grams of hydrocodone ("ninth count"). The cash found in appellant's pocket totaled $917, and it included a $100 bill, the serial numbers of which matched those of a $100 bill that St. Clair had given Nowak for the last controlled buy.
 {¶ 16} Appellant's counsel moved for an acquittal as to all counts, arguing that at no time did anyone see appellant directly taking part in the transactions or handling cocaine or money. Appellant's counsel also argued that the state failed to prove the school specification with respect to the last three buys, since no evidence was introduced establishing the distance of Nowak's apartment from the school. The trial court stated, "The Court can take judicial notice of the geo-political situation within its jurisdiction and the town plat of Port Clinton plats lots out or a block out at 400 by 400." Notably, at *Page 8 
no time during arguments on the motion did either party state the name of the "school" or specify what type of "school" it was.
 {¶ 17} The trial court denied the motion for acquittal as to the ten charges sub judice, and submitted the matter to the jury, which returned verdicts of guilty as to each count. Appellant stipulated to the forfeiture of $917 as the indictment provided. At sentencing, the trial court imposed a total term of 16 and one-half years incarceration: terms of 12 months incarceration for each of the fifth-degree felonies, the maximum term allowed pursuant to R.C. 2929.14(A)(5); two terms of 18 months incarceration for each count of trafficking cocaine in the vicinity of a school; a term of five years incarceration for trafficking in crack cocaine, the maximum term allowed pursuant to R.C.2929.14(A)(3); and ten years incarceration for engaging in a pattern of corrupt activity, the maximum term allowed pursuant to R.C.2929.14(A)(1). One term of 18 months, the term of five years, and the term of ten years were ordered to be served consecutive to each other and to the other counts. All other counts were ordered served concurrently.
 {¶ 18} Appellant has filed three assignments of error for review:
 {¶ 19} "I. The trial court erred when it denied defendant-appellant's motion for acquittal and/or new trial and entered judgment against defendant-appellant when the evidence was insufficient to sustain a conviction.
 {¶ 20} "II. The trial court erred when it denied defendant-appellant's motion for acquittal and/or new trial and entered judgment against defendant-appellant when it was not supported by the manifest weight of the evidence. *Page 9 
 {¶ 21} "III. The trial court erred in imposing the maximum possible and consecutive sentences for counts seven and ten upon defendant-appellant in that it did not comply with the requirements of Ohio Revised Code Sections 2929.11 et seq and/or it was against the manifest weight of the evidence and as a result, the trial court denied the defendant-appellant the due process of law [sic]."
 {¶ 22} We consider the first two assignments of error jointly. Appellant challenges his convictions as unsupported by sufficient evidence and as being against the manifest weight of the evidence. However, with respect to sufficient evidence, he only challenges his convictions for complicity in trafficking in drugs (Counts 3, 4, and 5), his three convictions for trafficking drugs in the vicinity of a school (Counts 6, 7, and 8), and his conviction for engaging in a pattern of corrupt activity. He does not challenge the sufficiency of the evidence supporting Counts 1, 2, and 9. He challenges all ten convictions as being against the manifest weight of the evidence. We affirm each conviction, but we must vacate the school specifications attached to Counts 6, 7, and 8 as unsupported by sufficient evidence.
 {¶ 23} Applying the "sufficiency of the evidence" standard, a reviewing court determines whether the evidence submitted is legally sufficient to support all elements of the offense charged. State v.Thompkins (1997), 78 Ohio St.3d 380, 386-387, superceded by constitutional amendment on other grounds as stated by State v.Smith (1997), 80 Ohio St.3d 89. Specifically, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential *Page 10 
elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 24} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. Upon review, an appellate court must consider all of the evidence produced at trial, and in order to overturn a conviction, must find that the jury clearly lost its way and created a "manifest miscarriage of justice."State v. Thompkins (1997), 78 Ohio St.3d at 387. In effect, the appellate court sits as a "thirteenth juror" and "disagrees with the factfinder's resolution of the conflicting testimony." Id. To overturn a verdict as against the manifest weight, the jury must have "clearly lost its way and created such a miscarriage of justice" that the verdict must be reversed. State v. Martin (1983), 20 Ohio App.3d 172, 175. The standard is difficult to meet, as the rule is necessary "to preserve the jury's role with respect to issues surrounding the credibility of witnesses." State v. Thompkins, 78 Ohio St.3d at 389; State v.DeHass (1967), 10 Ohio St.2d 230, 231. A conclusion that convictions are not against the manifest weight of the evidence necessarily encompasses a conclusion that the convictions are supported by sufficient evidence.
 {¶ 25} The three convictions for complicity in trafficking drugs (Counts 3, 4, and 5) were supported by evidence garnered from three controlled buys performed by the first CI. Complicity is defined by R.C.2923.03(A), which provides: *Page 11 
 {¶ 26} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 27} "(1) Solicit or procure another to commit the offense;
 {¶ 28} "(2) Aid or abet another in committing the offense;
 {¶ 29} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 {¶ 30} "(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 31} A person who engages in complicity may be "prosecuted and punished as if he were the principal offender." R.C. 2923.03(F). Here, the indictment charged appellant with aiding and abetting another in trafficking cocaine. In order to have aided and abetted, the evidence must show that appellant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."State v. Johnson (2001), 93 Ohio St.3d 240, syllabus. The evidence must show more than just the fact that the defendant was present at the scene of a crime. Id. at 243, citing State v. Widner (1982),69 Ohio St.2d 267, 269. Circumstantial evidence may establish a defendant's participation, however; participation "in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." Id. at 245, quoting State v. Pruett (1971), 28 Ohio App.2d 29, 34. *Page 12 
 {¶ 32} Counts 3, 4, and 5 are supported by ample evidence for a jury to conclude beyond a reasonable doubt that appellant aided and abetted Conyers and Carroll in the trafficking of cocaine. Appellant was not merely present at each transaction; the only time Conyers or Carroll presented the CI with cocaine was immediately after taking the CI's money to appellant. The CI did not need to see appellant physically handing the cocaine to Conyers or Carroll to know that appellant was the source, and neither did the jury. Circumstantial evidence carries the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus. Here, the circumstantial evidence is strong. Compare nearly identical factual circumstances in,State v. Wilcoxen, 2d Dist. No. 2002-CA-37, 2003-Ohio-6061; State v.Bires (July 21, 1989), 6th Dist. No. L-88-277; State v. Saldana (Dec. 4, 1992), 6th Dist. No. S-91-45; State v. Hatter (Mar. 19, 1993), 6th Dist. No. S-92-6; State v. Castile, 6th Dist. No. E-02-012, 2005-Ohio-41. The greater weight of the evidence also supports the convictions.
 {¶ 33} Likewise, appellant's three convictions for trafficking drugs at Nowak's apartment (Counts 6, 7, and 8) are supported by sufficient evidence and are not against the manifest weight of the evidence. These three convictions were supported by evidence garnered from the three controlled buys performed by the CI Nowak at his apartment. Nowak identified appellant as the person who brought the crack cocaine to his apartment; Nowak identified appellant as the voice recorded during the transaction; immediately *Page 13 
after Nowak's third transaction, appellant was arrested carrying a $100 bill which had matching serial numbers to a bill used in Nowak's transaction.
 {¶ 34} While appellant did not challenge his convictions for Counts 1, 2, and 9 for insufficient evidence, we find that the convictions are not against the manifest weight of the evidence. The first buy, constituting the first count, was conducted in essentially the same manner as Counts 3, 4, and 5, with Conyers performing as the middle-man between appellant and the CI. However, the jury could have inferred appellant's direct participation in the transaction from the circumstantial evidence: Appellant patted the CI down because he had previously "caught a case," and appellant offered to "rock [the powder cocaine] up" for the CI; and the fact that Conyers could not deliver cocaine to the CI unless and until appellant was present.
 {¶ 35} During the second buy, constituting Count 2, the CI testified that he directly handed appellant his buy money and appellant directly handed the CI three bags of cocaine. When appellant was arrested, a search of his shoe uncovered a bag containing a partially crushed white substance determined to be hydrocodone; possession of hydrocodone constituted the ninth count. Appellant was charged with possession of a dangerous drug, and was not charged with trafficking the hydrocodone; therefore, ample evidence showed appellant possessed this dangerous drug without a prescription in violation of R.C. 4759.21(C)(3) and without the exemption in R.C. 4759.21(C)(4).
 {¶ 36} Count 10, engaging in a pattern of corrupt activity, is also supported by sufficient evidence. R.C. 2923.32(A)(1), also known as the Racketeer Influenced and *Page 14 
Corrupt Organizations ("RICO") statute, provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Strict liability applies to violations of the statute. State v. Schlosser
(1997), 79 Ohio St.3d 329, syllabus. That is, no finding of a specific culpable mental state is required. Id. at 333. "The intent of the statute is to impose additional liability for the pattern of corrupt activity involving the criminal enterprise." Id. at 335.
 {¶ 37} Appellant argues that the state failed to present sufficient evidence demonstrating the existence of an "organization" or "entity" controlling the trafficking. He does not challenge the evidence regarding a "pattern of corrupt activity." In order to establish that a defendant engaged in a pattern of corrupt activity, the state must show that the defendant was "associated with" an "enterprise." An "enterprise" "includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C). Thus, "merely committing successive or related crimes is not sufficient to rise to the level of a RICO violation." Schlosser, 79 Ohio St.3d at 333. Instead, the state has "to prove that each defendant was voluntarily connected to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it."State v. Sieferd, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶ 43, quotingSchlosser, supra at 334. *Page 15 
 {¶ 38} The United States Supreme Court has held with respect to the Federal RICO statute, that the "enterprise" must be separate and distinct from the "pattern of corrupt activity" in which it is engaged.U.S. v. Turkette (1981), 452 U.S. 576, 583. That is, "[t]he enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of * * * activity is, on the other hand, a series of criminal acts as defined by the statute. * * * The `enterprise' is not the `pattern of * * * activity'; it is an entity separate and apart from the pattern of activity in which it engages." Id.
 {¶ 39} Appellant argues that while the evidence may show a series of cocaine sales, there is no evidence that these sales were in furtherance of a separate enterprise. However, ample evidence exists demonstrating that appellant was not selling cocaine alone. Conyers and Carroll both assisted in the drug transactions, and appellant frequently used (and seemed to prefer using) Wickerham's house as a place to conduct the transactions. In exchange, both Rider and St. Clair, along with both confidential informants, testified that the buyer was expected to give the "house," Wickerham or the person facilitating the transaction, a cut of the buy product. Appellant together with these individuals constituted a "group of persons" that functioned as a unit trafficking in cocaine pursuant to R.C. 2923.31(C). State v. Welch, 3d Dist. No. 16-06-02, 2006-Ohio-6684; State v. Mendenhall, 3d Dist. No. 6-04-11,2005-Ohio-3604, ¶ 18 (statute requires "only that two or more persons are associated for the purpose of engaging in corrupt activities.");State v. Humphrey, 2d Dist. No. 2002-CA-30, 2003-Ohio-3401, ¶ 41 *Page 16 
("enterprise" of drug trafficking requires evidence of "an ongoing organization or entity whose members functioned as a continuing unit."), citing U.S. v. Turkette, 452 U.S. at 583.
 {¶ 40} However, we must conclude that the state failed to prove with sufficient evidence the school enhancement specifications attached to Counts 6, 7, and 8. R.C. 2925.03(C) provides for enhanced penalties if the trafficking was "committed in the vicinity of a school." This specification enhances the felony level for the offense and must be separately established beyond a reasonable doubt. State v. Manley
(1994), 71 Ohio St.3d 342, 346, citing, inter alia, State v. Murphy
(1990), 49 Ohio St.3d 206. As such, it is "an essential element of the state's case-in-chief." State v. Brown (1993), 85 Ohio App.3d 716, 723. The three instances of cocaine trafficking conducted inside Nowak's apartment were specified in the indictment as having occurred in proximity to a school. At the time of appellant's offenses, R.C. 2925.01
provides the particular definitions:
 {¶ 41} "(P) An offense is `committed in the vicinity of a school' if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed on school premises, in a school building, or within one thousand feet of the boundaries of any school premises.
 {¶ 42} "(Q) `School' means any school operated by a board of education, any community school established under Chapter 3314. of the Revised Code, or any *Page 17 
nonpublic school for which the state board of education prescribes minimum standards under section 3301.07 of the Revised Code, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted at the time a criminal offense is committed."
 {¶ 43} The court in Brown, supra, held that since no jury instructions were given for the definitions of "school" or "school premises," the state failed to prove the school enhancement specification. Then, inManley, supra, the Ohio Supreme Court held that failure to instruct the jury with the statutory definition of "school" is not per se plain error pursuant to Crim.R. 52(B). In Manley, the defendant failed to object to the lack of testimony regarding the existence of a school, failed to move for an acquittal on the issue, and failed to object to the lack of jury instructions. In so holding, the Manley court relied on the rule that indirect evidence carries the same probative weight as direct evidence. The officer who had measured the distance from the drug transaction to the Whittier School testified, and three witnesses had testified that the "Whittier School" was within sight of the drug transaction's location.
 {¶ 44} Subsequently, State v. Shaw, 7th Dist. No. 03-JE-14, 2004-Ohio-5121, reversed a school enhancement specification, even though the jury had been instructed on the statutory definition of "school." At trial, counsel for both parties referred to the school as the "Wells school" and the city engineer who had measured the distance from the drug transaction to the school property testified. Ruling on the defendant's motion for acquittal on the issue, the trial court apparently attempted to take judicial notice that the *Page 18 
Wells school met the statutory definition of "school." The Shaw court held, nonetheless, that "judicial notice cannot be taken of elements of an offense." Shaw, 2004-Ohio-5121, ¶ 55. It found the evidence insufficient, stating:
 {¶ 45} "No witness actually testified that Appellant's drug offenses occurred within one thousand feet of an actual school. It appears that each witness assumed the existence of an operation school at this location. However, merely calling the building "Wells school" does not rise to the level required to prove its existence. For all this Court can glean from this record, the building may once have been a school, but is no longer used for that purpose. There must be some evidence on the record on which to base this assumption." Id. at ¶ 56.
 {¶ 46} The purpose of the school enhancement specification was "intended to punish more severely those who engage in the sale of illegal drugs in the vicinity of our schools and our children."Manley, 71 Ohio St.3d at 346. The introduction of evidence that a "school" as defined by R.C. 2925.01 actually exists in proximity to the location is, therefore, not an unduly burdensome requirement. Laxness in proof that an illegal drug sale occurred in the vicinity of a school for minor children — as opposed to a vacant school building or a post-secondary welding school — results in defendants receiving enhanced penalties contrary to the purpose of the law.
 {¶ 47} The Manley court held that failure to give jury instructions regarding the definition of school is reviewed for plain error. It is axiomatic that "[t]he failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but *Page 19 
for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. Here, however, we review the conviction on the school enhancement specification for sufficient evidence to support the conviction, because appellant's counsel argued in his motion for acquittal that the state had not sustained its burden of proof.
 {¶ 48} Only agent St. Clair testified to the distance of the "school" from the last three transactions, in CI Nowak's apartment. The distance was measured by a non-testifying agent, unlike Brown, Manley, andShaw. This court has previously reversed a school enhancement specification where the state presented insufficient testimony as to how the distance was calculated and presented no documentary evidence supporting the assertions. State v. Olvera (Oct. 15, 1999), 6th Dist. No. WM-98-022, WM-98-023. More importantly, unlike Brown, Manley, andShaw, St. Clair did not state the name of the school, and absolutely no evidence indicated the type of school. We cannot assume the existence of sufficient evidence to support an essential element of the state's case-in-chief. Brown, supra, Olvera, supra. In this context, where the state presented insufficient evidence on its burden of proof, the failure to instruct the jury that a "school" must meet the definition of R.C. 2923.01 is plain error. That is, had the jury been instructed that the drug transaction must have occurred within one thousand feet of a "school" as defined by statute, the jury would clearly have decided otherwise. Appellant suffered prejudice from the error. His first assignment of error is therefore well-taken only with respect to the school enhancement specifications for Counts 6, 7, and 8. *Page 20 
 {¶ 49} Accordingly, appellant's first and second assignments of error are not well-taken with respect to the first five counts of trafficking in and complicity to traffic in cocaine, with respect to the three separate counts of trafficking in cocaine and crack cocaine, with respect to the count of possession of a dangerous drug, and with respect to the conviction for engaging in a pattern of corrupt activity. The first assignment of error is well-taken to the extent that insufficient evidence supports the enhancement specification of trafficking within the vicinity of a school.
 {¶ 50} Last, appellant challenges his sentence. As explained supra, the school enhancement specifications attached to Counts 6, 7, and 8 are reversed and must be vacated. Because only the school enhancement specifications are vacated, the conviction on Count 6 is now a felony of the fifth degree, the conviction on Count 7 is now a felony of the fourth degree, and the conviction on Count 8 is now a felony of the fifth degree. R.C. 2925.03(C). Because both of the 18-month terms for Counts 6 and 8 and the five year term for Count 7 now exceed the statutory maximums for the offenses, R.C. 2929.14(A)(4), (5), those sentences must be vacated as contrary to law. R.C. 2953.08(G)(2)(b). Appellant's third assignment of error is well-taken regarding Counts 6, 7, and 8.
 {¶ 51} Considering the remaining counts, appellant mainly argues that the trial court gave insufficient consideration to the principles and purposes of sentencing articulated in R.C. 2929.11, 2929.12. In support, he points to statements made by the *Page 21 
trial court at his sentencing hearing, and argues that they demonstrate a failure to consider every factor listed in each statute.
 {¶ 52} R.C. 2929.12 "provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender" and was not severed by State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856.State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. "A trial court's discretion to impose a sentence within the statutory guidelines is very broad and an appellate court cannot hold that a trial court abused its discretion by imposing a severe sentence on a defendant where that sentence is within the limits authorized by the applicable statute.State v. Harmon, 6th Dist. No. L-05-1078, 2006-Ohio-4642, ¶ 16, citingHarris v. U.S. (2002), 536 U.S. 545, 565. An appellate court may not set aside the sentence if there is no clear showing that the trial court abused its discretion. Id. An abuse of discretion connotes more than an error in judgment or law; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219." State v. Friess, 6th Dist. No. L-05-1307, 2007-Ohio-2030, ¶ 6.
 {¶ 53} Contrary to appellant's suggestion, "no specific language * * * must be used to evince the requisite consideration of the applicable seriousness and recidivism factors. State v. Arnett (2000),88 Ohio St.3d 208, 215. For this reason, a sentencing judge can satisfy his or her duty under R.C. 2929.12 with nothing more than a rote recitation that the applicable factors of R.C. 2929.12(B)(1) have been considered. Id." Friess, 2007-Ohio-2030, at ¶ 7. *Page 22 
 {¶ 54} At the sentencing hearing, the trial court reviewed the pre-sentence investigation report, and stated on the record and in its judgment entry that it had considered the principles and purposes of R.C. 2929.11 and 2929.12. It found appellant not amenable to community control and, considering his criminal history, found a longer prison term warranted. The terms imposed for Counts 1 through 5 and Counts 9 and 10 were within the statutory range and so are not unauthorized by law. Upon review of the entire sentencing record, we cannot say the trial court abused its discretion.
 {¶ 55} Although not stated in the assignment of error, appellant also argues that the trial court made improper findings of fact pursuant to statutes severed as unconstitutional by State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. Appellant did not raise any objection, either by pre-sentencing motion or orally at the sentencing hearing, regardingBlakely v. Washington (2004), 542 U.S. 296, or Apprendi v. NewJersey (2000), 530 U.S. 466. He has therefore waived Foster review of his maximum and consecutive sentences. State v. Davis,116 Ohio St.3d 404, 2008-Ohio-2, ¶ 378. This claim is therefore subject to plain error review. See State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 24. Upon review, we find no plain error, since no improper considerations of the trial court — even if made — altered the authorized sentence appellant received. Appellant's third assignment of error is not well-taken with respect to each sentence except Counts 6, 7, and 8, but well-taken with respect to those counts.
 {¶ 56} The judgment of the Ottawa County Court of Common Pleas is affirmed in all other respects. This matter is remanded to the trial court in order to resentence *Page 23 
appellant on his convictions for Counts 6, 7, and 8. State v. Saxon
(2006), 109 Ohio St.3d 176, 2006-Ohio-1245. Appellant and appellee are each ordered to pay one-half the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J. Concur.
[1] Appellant was separately indicted for three additional drug-related counts. At trial, one count was dismissed and the jury returned verdicts of not guilty for two counts. Therefore, we focus upon the evidence brought forth relating only to the convictions and sentence upon the ten count indictment. *Page 1