DECISION AND JUDGMENT
{¶ 1} Appellant, Valentino Pino, appeals the judgment of the Wood County Court of Common Pleas. Appellant was indicted for two counts of complicity to trafficking in heroin, a first degree felony and a violation of R.C. 2923.03(A)(2) and 2925.03(A)(1)(C)(6)(e) ("first count"), and a second degree felony and a violation of R.C. 2923.02(A)(2) and 2925.03(A)(1)(C)(6)(e) ("second count"). He was separately indicted for another count of complicity to trafficking in heroin, a first degree felony and a violation of *Page 2 
R.C. 2923.03(A)(2) and 2925.03(A)(1)(C)(6)(f) ("third count"). He entered not guilty pleas to each count and the matter proceeded to a jury trial.
 {¶ 2} The indictments stemmed from three separate transactions for heroin between Lily Lopez and Derek Salah, a confidential informant ("CI"). The state's theory of the case was that Lopez was a "mule" and merely delivering heroin for appellant, her supplier. Salah testified that he had been selling marijuana, cocaine, and heroin for several years, averaging about five ounces of heroin per week. At the time of trial, he was in custody for violating his bond on a previous charge involving possession of over 50 grams of heroin; this charge occurred after his tenure as a CI in this case. Lopez had also been indicted and was waiting trial for trafficking. Neither Lopez nor Salah had, at the time of trial, entered into agreements with the state to receive mitigations in exchange for their testimony.
 {¶ 3} Before Salah met Lopez for each buy, Perrysburg Township Detective James Gross searched him and his car and fitted him with a recording device. Bureau of Criminal Identification and Investigations Agent Andy Mulinix provided Salah with buy money, which he photocopied. After the transactions were completed, Salah gave the heroin to the waiting agents and his car and person were again searched; this procedure was used in each controlled buy. During each of the three controlled buys, three to four agents provided undercover surveillance in the surrounding area.
 {¶ 4} During Salah's testimony, the state played a tape recording of two telephone calls placed by Salah to Lopez on August 2, 2006, arranging a transaction for $2,200 worth of "raw," i.e. pure, heroin ("first count"). In the first call, Salah asked Lopez to *Page 3 
deliver heroin; Lopez told Salah that she had to call her "dude," i.e. supplier, and call Salah back. In the second call, Lopez told Salah that her supplier had the heroin and that she had to wait for the supplier to pick her up and drive her. They arranged to meet at a room in the Comfort Inn hotel.
 {¶ 5} At the meeting on August 2, at a Comfort Inn in Wood County, Lopez told Salah she could only sell him one-half of an ounce. Salah asked for the heroin before he gave her the money; Lopez went outside to consult her "dude," and returned to tell Salah that her "dude" needed the money before Salah could have the heroin. Two agents providing surveillance, Drug Enforcement Administration Agent Steve Papenfuss and Wood County Deputy Sheriff Michael Ackley, observed Lopez and another female arrive in a white Oldsmobile, and observed a male, whom they later identified as appellant, arrive in a Ford Escort. Both officers saw a "small young child" in the vehicle with appellant.
 {¶ 6} Lopez also testified to her involvement in each controlled buy. She related that on August 2, she drove her white Oldsmobile to the Comfort Inn, along with a female friend, while appellant drove separately in his car with his child. She explained that for each transaction, she had to take the heroin from appellant to Salah because appellant did not trust her to carry the heroin alone; she directly delivered the heroin to Salah because appellant did not want to be directly involved in the transactions. In return, Lopez would receive a cash payment for her service.
 {¶ 7} On August 10, 2006, Salah again called Lopez to arrange a transaction for heroin; this transaction was arranged for August 14, 2006 ("third count"). More phone *Page 4 
calls between Salah and Lopez on August 14, 2006, were played, ironing out details as to whether Salah would travel to meet Lopez and her supplier or whether Lopez would be able to bring her supplier to Salah at the Holiday Inn on Route 20 in Perrysburg, Ohio. Lopez indicated repeatedly that her supplier was too nervous to travel to meet Salah, but eventually Lopez told Salah that her supplier agreed.
 {¶ 8} No recording was submitted of the transaction on August 14, 2006. However, Salah testified: "[Lopez] came in, asked for the money. And I told her I couldn't give her all the money, so I gave her half the money. She went out and brought half of it back. And then she told me to walk down with her to get the other half, and I walked down with her. I waited by the exit door on the side and she went out. And then she came, then the truck pulled up, the dude got out, grabbed it, gave it to her. She brought it back in the building. I gave her the rest of the money and I went back to the room." Salah identified appellant in-court as the "dude," but did not know his name. Salah gave the heroin to Agent Papenfuss, who was waiting in another hotel room.
 {¶ 9} BCI Agent Mulinix, who provided surveillance from the hotel parking lot, saw a truck driven by a male in the same area which Salah described. He obtained the license plate and briefly followed the vehicle; a later inquiry showed the plate was registered to Luis Pino. During his later testimony, appellant acknowledged that the truck belonged to his son. Other agents also testified to seeing a male, later identified as appellant, driving a truck and handing off items to Lopez by depositing them in some bushes, where Lopez would retrieve them. *Page 5 
 {¶ 10} On September 20, 2006, agents conducted a "buy-bust" controlled buy, where they planned to arrest Lopez, Salah, and appellant immediately after the buy. Salah again contacted Lopez and arranged to buy three to four ounces of heroin at the Holiday Inn on Route 20 in Perrysburg, Ohio. He drove his own car to a store in front of the hotel. After Lopez failed to show there, she telephoned Salah and said that she could only provide one-half of an ounce of heroin. Salah drove to the hotel, and then Lopez contacted him and arranged to meet at a gas station in front of the hotel. Appellant drove Lopez to the gas station. Salah entered the gas station, purchased a pack of cigarettes, came out, met Lopez, and the two started walking across the gas station parking lot together. Salah testified that Lopez then put her hand into his pocket and dropped the heroin into his pocket. After another few steps, they were arrested.
 {¶ 11} Testifying agents who provided surveillance saw the same vehicle from the August 2, 2006 transaction, a Ford Escort, driven by appellant, enter the parking lot, then saw Lopez exit the Escort and conduct the transaction with Salah. Appellant waited in the Escort during the transaction and was arrested along with Lopez and Salah. Detectives seized $626 in cash found on appellant's person after his arrest.
 {¶ 12} Scott Dobransky, forensic chemical scientist with BCI, testified to his testing of the substances received in each of the three controlled buys Salah made from Lopez. The buy of August 2, 2006 ("first count") yielded 12.92 grams of heroin; the buy of August 14, 2006 ("third count") yielded 50.3 grams of heroin; and the buy of September 20, 2006 ("second count") yielded 12.31 grams of heroin. *Page 6 
 {¶ 13} Appellant testified that he met Lopez through her boyfriend, "Jo-Jo," in Toledo while he was working to restore a house he had purchased; Jo-Jo had offered to help appellant with the work. After Jo-Jo was incarcerated, Lopez would frequently ask appellant for help with money or for rides to do errands. Appellant testified that his son, Luis, owned a business and together they had several vehicles, including the truck driven during the second buy.
 {¶ 14} Appellant testified to the dates of each controlled buy, and explained that on each of those days, Lopez had contacted him asking for a ride to "pick up money." During the first buy, appellant asserted that he drove Lopez in the Escort along with his nine year-old son; he saw Lopez enter the Comfort Inn and then return with $200. He denied following Lopez in his Escort while she drove her white Oldsmobile and said no other person was with Lopez. During the second buy, appellant was unable to give Lopez a ride as she had requested, so he allowed her to borrow his truck; she took the truck at approximately 7:00 p.m. and returned it sometime after 12:30 the next morning. The day of the third buy, appellant again described how Lopez contacted him and begged for a ride because "this dude going to give me some money." He then described waiting for her in the car while she met someone in the gas station parking lot, and then described his subsequent arrest. He adamantly denied selling drugs to Lopez or anyone else.
 {¶ 15} From that judgment of conviction, appellant appealed and now sets forth three assignments of error for review:
 {¶ 16} "I. The trial court erred to the prejudice of Pino and denied his right to due process and a fair trial by not granting the Rule 29 motions for judgment of acquittal as to *Page 7 
all counts of the indictments at the end of the state's case and after the verdict was announced.
 {¶ 17} "II. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution by finding him guilty of complicity to trafficking in heroin, as that verdict as not supported by sufficient evidence and was also against the manifest weight of the evidence.
 {¶ 18} "III. Cumulative errors committed in this trial, even if individually insufficient to constitute reversible error, in the aggregate deprived appellant his fundamental right to due process and fair trial [sic]."
 {¶ 19} In his first assigned error, appellant argues that his motions for acquittal should have been granted. In his second assignment of error, appellant argues both that his convictions were supported by insufficient evidence and were against the manifest weight of the evidence. We consider these errors and arguments jointly, reviewing all the evidence.
 {¶ 20} Regarding the sufficiency of the evidence, an appellate court is required to construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find beyond a reasonable doubt the essential elements of the offense.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v.Smith (1997), 80 Ohio St.3d 89. *Page 8 
 {¶ 21} "Crim. R. 29(A) provides that the trial court shall enter a judgment of acquittal `if the evidence is insufficient to sustain a conviction of such offense or offenses.' Thus, `the test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same as in reviewing a challenge based upon on the sufficiency of the evidence to support a conviction.' State v.Thompson (1998), 127 Ohio App.3d 511, 525. `On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.' State v. Thompkins (1997), 78 Ohio St.3d 380, 390."Toledo v. Flugga, 6th Dist. No. L-06-1233, 2007-Ohio-1374, ¶ 13.
 {¶ 22} When a court considers whether the verdict is against the manifest weight of the evidence, the question is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction." State v. Group,98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 77, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. The appellate court considers all of the evidence, sits as a "thirteenth juror," and decides whether a greater amount of credible evidence supports a conviction such that the jury "clearly lost its way." State v. Thompkins (1997), 78 Ohio St.3d at 387.
 {¶ 23} Each of the three convictions for complicity in trafficking heroin was supported with evidence gathered from each of the controlled buys. Complicity, as appellant was charged, is defined by R.C. 2923.03(A), which provides: *Page 9 
 {¶ 24} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 25} "* * *
 {¶ 26} "(2) Aid or abet another in committing the offense; * * *."
 {¶ 27} R.C. 2923.03(F) provides, "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." "[A] defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." State v. Herring (2002), 94 Ohio St.3d 246, 251.
 {¶ 28} The indictments charged appellant with aiding and abetting Lily Lopez in trafficking cocaine. "In order to have aided and abetted, the evidence must show that appellant `supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.' State v. Johnson (2001), 93 Ohio St.3d 240, syllabus. The evidence must show more than just the fact that the defendant was present at the scene of a crime. Id. at 243, citingState v. Widner (1982), 69 Ohio St.2d 267, 269. Circumstantial evidence may *Page 10 
establish a defendant's participation, however; participation `in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' Id. at 245, quotingState v. Pruett (1971), 28 Ohio App.2d 29, 34." State v. Boyd, 6th Dist. No. OT-06-034, 2008-Ohio-1229, ¶ 31.
 {¶ 29} In his first assignment of error, appellant argues that he was largely convicted on the strength of Lopez's and Salah's unreliable and incredible testimony. Their testimony should be disregarded, he argues, because they admitted to trafficking in heroin and other illegal substances, were waiting trial for trafficking charges, and were hoping to use their testimony in mitigation or defense. He also points to inconsistencies between Lopez's and Salah's versions of the August 2, 2006 buy.
 {¶ 30} Because the fact-finder sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), 2d Dist. No. 16288. Moreover, Lopez's and Salah's testimony, while at times inconsistent with each other, was bolstered in significant respects by both the testimony of the surveillance officers and the recorded controlled buys. The extent to which their testimony corresponds with the officers' vantage points and the objective recordings rendered their testimony credible to the finder of fact. While appellant notes their self-interest in helping obtain his conviction, he overlooks the self-incriminating nature of Lopez's testimony, as she admitted her participation in each controlled buy. *Page 11 
 {¶ 31} Appellant also argues that, aside from Lopez's and Salah's testimony, no heroin was ever found on his person or in his vehicle and that he was never named as Lopez's supplier in any recorded conversation between Lopez and Salah. When appellant was arrested, however, the heroin had already passed from Lopez to Salah, making it less likely that he would remain in possession. Additionally, testimony from several experienced drug enforcement officers established the habit of narcotics traffickers to refrain from using proper names in telephone conversations.
 {¶ 32} In some respects, this case resembles the convictions for complicity in trafficking cocaine addressed in State v. Boyd,2008-Ohio-1229, supra. In Boyd, the defendant was convicted of several counts where he used a "go-between," or a "mule," similar to Lopez's role in these controlled buys. The defendant was never seen in possession of the cocaine, and was not recorded transacting in cocaine. As in Boyd, the CI did not need to see or hear appellant physically handing the heroin to Lopez in order to know that he was the source, and neither did the jury. The circumstantial evidence of appellant's presence during each of the controlled buys and his assistance to Lopez during the controlled buys has the same probative value as direct evidence. Boyd, 2008-Ohio-1228, ¶ 32, citing State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 33} The state also demonstrated sufficient evidence to sustain the specification for trafficking in the vicinity of a juvenile on the first count. R.C. 2925.03(C)(6)(e) provides for enhanced penalties if the trafficking was committed "in the vicinity of a juvenile." The specification is an essential element of the state's case-in-chief and must be separately proven beyond a reasonable doubt. State v. Brown
(1993), *Page 12 85 Ohio App.3d 716, 723; State v. Manley (1994), 71 Ohio St.3d 342, 346, citing, inter alia, State v. Murphy (1990), 49 Ohio St.3d 206. During the controlled buy on August 2, 2006, both Lopez and two surveillance agents testified that appellant had a "small young child" with him in his Escort when he met Lopez at the Comfort Inn. The evidence entitled the jury to infer that appellant was delivering heroin to Lopez with a juvenile in his automobile.
 {¶ 34} In sum, the state presented sufficient evidence for the jury to find that appellant was the source of the heroin Lopez delivered to Salah and that, therefore, appellant aided or abetted Lopez in trafficking heroin. Further, the convictions are not against the manifest weight of the evidence. While the evidence that appellant aided or abetted Lopez is largely circumstantial — depending upon his presence at each controlled buy, Lopez's testimony that appellant supplied her with heroin, and Salah's and the agents' identifications — the cumulative effect of the evidence weighs heavily against appellant. The jury was entitled to believe the testimony of Lopez and the surveillance agents over appellant's testimony that he merely drove Lopez on each occasion; appellant's testimony was contradicted not only by other testimony, but also, regarding the first count, the recording showing that Lopez drove her own automobile and that appellant, inexplicably, was also present during the transaction. As the jury did not clearly lose its way and no manifest miscarriage of justice occurred, appellant's first and second assignments of error are not well-taken.
 {¶ 35} Despite the weight of the evidence, appellant argues in his third assignment of error that cumulative errors at trial combined to violate his fundamental due process right to a fair trial. "In State v.DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the *Page 13 
syllabus, we recognized the doctrine of cumulative error. Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v.Garner (1995), 74 Ohio St.3d 49, 64. The doctrine of cumulative error only applies where multiple instances of harmless error are present. Id.
 {¶ 36} In support, appellant alleges the following errors: First, that the prosecution wrongfully refused to give his defense counsel copies of the audio recordings of the controlled buys and telephone calls between Salah and Lopez; second, that the trial court wrongfully sustained an objection by the prosecution on grounds of irrelevance when appellant's counsel asked Lopez the name of the female who accompanied her to the August 2, 2006 transaction; third, that the trial court should have granted appellant's motion for a mistrial after Lopez testified that appellant told her he had been "in trouble" before; and fourth, that the prosecutor committed misconduct when, in closing, she overstated appellant's prior conviction for trafficking cocaine. We address each alleged error in turn and then consider the cumulative effect, if any.
 {¶ 37} With respect to the audio recordings, upon appellant's motion to obtain copies of the recordings, the state responded that they were available for his counsel's review at the prosecutor's office. In response to appellant's motion to compel disclosure of the recordings, the state reiterated that the recordings were available for review at the prosecutor's office, and further, that copies would be made if appellant furnished blank compact discs. The state also expressed concern that if copies were made, the *Page 14 
confidential informant may be placed in jeopardy. The trial court denied appellant's motion to compel, on grounds that appellant's counsel had "plenty of time" to review the recordings, and it would not require the state to provide copies of the recordings for the protection of the confidential informant.
 {¶ 38} Crim. R. 16(B)(1)(c) provides:
 {¶ 39} "Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." (Emphasis added.)
 {¶ 40} The general rule, therefore, is that, upon a defendant's motion, the court lacks discretion as to whether to order the prosecution to provide copies of recordings which are either "material" to the defense or which the prosecution intends to use at trial.
 {¶ 41} Crim. R. 16(E), however, permits trial courts to regulate discovery in criminal cases upon a "sufficient showing." Further, on review, the appropriate standard is whether the trial court abused its discretion in admitting undisclosed evidence at trial. State v.Otte (1996), 74 Ohio St.3d 555, 563, certiorari denied 117 S.Ct. 109,519 U.S. 836, citing State v. Scudder (1994), 71 Ohio St.3d 263, 269;State v. Wiles (1991), 59 Ohio St.3d 71, 79. No abuse of discretion occurs "unless the record shows that the prosecutor's discovery violation was willful, that foreknowledge would have benefited *Page 15 
the accused in preparing his defense, or that the accused was unfairly prejudiced." Otte, 74 Ohio St.3d at 563.
 {¶ 42} Here, appellant was not prejudiced by the state's failure to provide copies of the recordings. We note the disjunctive nature of the requirements listed in Otte. However, appellant had the opportunity to review the recordings, and possession of the admitted recordings would not have benefited preparation of his defense. For example, in State v.South, 162 Ohio App.3d 123, 2005-Ohio-2152, the defendant successfully argued that actual possession of police videotapes was necessary in order to enhance the recording's quality and this discover exculpatory material. Further, appellant did not object to the recordings' admission at trial. Otte, 74 Ohio St.3d at 563. While the default practice should be to provide copies of duplicable materials upon request, on these facts, no abuse of discretion occurred.
 {¶ 43} Next, appellant argues error occurred when the trial court did not allow Lopez to identify her female passenger during the August 2 controlled buy. The trial court sustained the prosecution's objection to appellant's counsel's question on grounds of relevance. Appellant's counsel did not object or argue that the passenger's identity was material evidence pursuant to Brady v. Maryland (1963), 373 U.S. 83. On appeal, the state still focuses solely on whether the passenger's identity is relevant pursuant to Evid. R. 401. Clearly, the passenger's identify is relevant, as she was a possible witness to the controlled buy, or at least a possible witness to Lopez's interactions with appellant in the parking lot prior to the buy. The issue is whether the trial court's refusal to admit her identity at trial was material and deprived appellant of a fair trial. *Page 16 
 {¶ 44} "In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense." State v. Johnston,39 Ohio St.3d 48, paragraph five of the syllabus, following United States v.Bagley (1985), 473 U .S. 667. Reversal of the conviction is required only if it deprives the defendant of a fair trial, that is, if the "evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678. "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose * * *." Id., 675-676, quoting United States v. Agurs, 427 U.S. at 108. The undisclosed evidence's impact on the trial must not be considered in isolation. The "cumulative effect" of the undisclosed evidence must be considered.Kyles v. Whitley (1995), 514 U.S. 419, 436-437.
 {¶ 45} While, in retrospect, we can see that disclosure of the passenger's identity could have been used in appellant's defense — she could have been subpoenaed to testify at trial regarding appellant's presence on August 2 — we cannot see how her testimony, even if beneficial to appellant, would have affected the outcome. Appellant disputed Lopez's version of August 2 insofar as he claimed to have driven her to the Comfort Inn *Page 17 
in his Escort, while Lopez testified that she and her passenger drove separately in her Oldsmobile and appellant followed in his Escort. Appellant's counsel responded to the prosecution's relevancy objection by arguing that the passenger could demonstrate Lopez's veracity.
 {¶ 46} However, the recordings belie appellant's version and actually bolster Lopez's veracity. Lopez can be clearly heard describing to Salah how she drove her car and that her supplier, whom she identified as appellant, was waiting in the parking lot. Therefore, while the trial court erred in sustaining the prosecution's objection — especially on relevancy grounds — the error did not prejudice appellant as it does not undermine our confidence in the outcome.
 {¶ 47} Third, appellant argues error occurred when Lopez mentioned that appellant had "been in trouble before" and the court then refused appellant's motion for a mistrial. Lopez had been asked why appellant did not trust her to deliver the heroin alone and why no proper names were used in conversations. She responded: "Yes, there was a few calls. And first I text-messaged [appellant] because at first I called him, ma'am, and he didn't answer, so I text-messaged and said I really need to talk to you. Because he always told me when I met with him, do not say anything about drugs on the phone. He said, you know, I've been in trouble like that before so I would rather, you know, come to you and we'll talk."
 {¶ 48} The decision to deny a mistrial is reviewed for an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182, citingState v. Williams (1975), 43 Ohio St.2d 88. "`A mistrial should not be ordered in a criminal case merely because some error or *Page 18 
irregularity has intervened * * *.' State v. Reynolds (1988),49 Ohio App.3d 27, 33. The granting of a mistrial is necessary only when a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118, 127." State v. Treesh (2001), 90 Ohio St.3d 460, 480.
 {¶ 49} We agree with the trial court's ruling on the motion, that, in context, Lopez's comment regarding being "in trouble" was ambiguous. The trial court was unsure that the jury even noticed, because, as it stated, "Obviously anyone knows if you're talking about drugs on the phone you might get in trouble, and I think the way she said it the jury could infer that he's worried about getting caught, not that there was necessarily a past." Moreover, appellant's prior conviction for trafficking cocaine was admitted during his testimony and thus, the jury was subsequently aware that appellant had been "in trouble" before. Therefore, although Lopez's comment was objectionable, the error and the refusal to grant a mistrial was harmless error as it did not deprive appellant of a fair trial.
 {¶ 50} Fourth, appellant argues that the prosecutor committed misconduct when, in closing arguments, she took appellant's prior conviction and extrapolated facts which were not in evidence. She stated, "Now, let's look at the defendant's version of the events. First off, defendant tells you that he was sent to prison and served thirty-six months, that he was in possession of over one kilo of cocaine. Now if you convert that into grams, it is over 1,000 grams. And if you are generous it would be approximately $100 a gram." Upon appellant's counsel's objection, the trial court instructed the jury: *Page 19 
 {¶ 51} "Ladies and gentlemen of the jury, counsel are now arguing what they believe the evidence was and what reasonable inferences you should make from the evidence. It's up to you to remember what the testimony was and to choose to believe or not believe whether counsel agree on what was testified is not a matter of importance, it's a matter what have you collectively in deliberating conclude [sic]. With that cautionary instruction you may proceed."
 {¶ 52} Thus, the prosecution continued in that vein: "He was caught and sent to prison for possessing approximately $100,000 worth of cocaine. The defendant-[defendant's counsel] tried to indicate, that Derrick Salah and Lily Lopez had every reason to lie. The defendant himself has a huge reason to lie. He knows what it takes not to be caught."
 {¶ 53} "The test for prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v.Smith (1984), 14 Ohio St.3d 13, 14." State v. Were, ___ Ohio St.3d ___,2008-Ohio-2762, ¶ 198. In evaluating remarks in closing arguments, "[p]rosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence." Id. at ¶ 205, quoting State v. Smith (1997), 80 Ohio St.3d 89. However, a prosecutor has a "duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury."State v. Smith (1984), 14 Ohio St.3d at 14, citing United States v.Dorr (C.A. 5, 1981), 636 F.2d 117. Also, "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." Id, citing *Page 20 State v. Thayer (1931), 124 Ohio St. 1. While barred from expressing his or her personal belief, a prosecutor may "suggest that the evidence demonstrates the defendant is lying." State v. Skipper, 8th Dist. No. 81963, 2003-Ohio-3531, ¶ 45, citing State v. Draughn (1992),76 Ohio App.3d 664.
 {¶ 54} Where the prosecutor argues facts not in evidence, it will not constitute misconduct if the remarks are in response or rebuttal to defense counsel's arguments. State v. Elmore, 111 Ohio St.3d 515,2006-Ohio-6207, ¶ 66; State v. Craig, 110 Ohio St.3d 306,2006-Ohio-4571, ¶ 110, 114. Here, appellant's prior conviction for trafficking cocaine was revealed during his testimony and appellant acknowledged that he was in possession of over one kilogram of cocaine. The prosecutor, however, extrapolated a monetary value for the cocaine from facts not in evidence. This point bolstered not only her immediate point that appellant had "reason to lie," but also presented an implicit argument that because appellant had been convicted before, he was guilty now.
 {¶ 55} These comments, however, are not couched in terms of the prosecutor's belief in appellant's guilt; rather, they are comparative of Lopez's, Salah's and appellant's motivations. Even if we were to find misconduct, the effect of the remarks must be considered in light of the whole trial. State v. Williams (1995), 73 Ohio St.3d 153, 169. Considering that the jury knew that appellant had been convicted of an offense involving a kilogram of cocaine, the prosecutor's comments would not have added much weight and did not prejudice appellant.
 {¶ 56} Because we have found multiple errors, we must proceed with a cumulative error analysis. To reiterate, a verdict may be reversed where the cumulative effect of *Page 21 
separately harmless errors deprives the defendant of his constitutional right to a fair trial. State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus.
 {¶ 57} After examining the issues presented and evaluating the totality of the errors' impact on appellant's trial, we cannot say that due process was not satisfied. Appellant was not prejudiced by the failure to obtain copies of recordings, nor was he prejudiced by Lopez's mention of appellant's being "in trouble" before. The evidentiary ruling regarding Lopez's female companion during the first controlled buy was clearly error; however, even if the female companion corroborated appellant's version of events, it would have been discredited by the recording of the buy. During closing arguments, the prosecutor improperly referred to facts not in evidence; however, any prejudicial weight was minimal since the jury knew the facts of appellant's prior conviction. Since the cumulative effect of the errors did not deprive appellant of a fair trial, his third assignment of error is not well-taken.
 {¶ 58} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., *Page 22 
William J. Skow, J., CONCUR. *Page 1