[Cite as *State v. Shelby*, 2019-Ohio-1564.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-17-056

    Appellee                                 Trial Court No. 15 CR 453

v.

Quentrell Shelby                            **DECISION AND JUDGMENT**

    Appellant                               Decided: April 26, 2019

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, David T.
Harold and Jim A. Hoppenjans, Assistant Prosecuting Attorneys,
for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

### Introduction

{¶ 1} This case concerns a large quantity of prescription drugs found in a vehicle

after it was stopped by the Ohio State Highway Patrol, along I-75 in Wood County. One

of the car's occupants, appellant Quentrell Shelby, was asleep in the backseat at the time

of the stop and was observed by a state trooper to be holding a plastic bag full of drugs. Following a jury trial in the Wood County Court of Common Pleas, appellant was convicted of drug possession, drug trafficking and possession of criminal tools and sentenced to four years in prison. On appeal, appellant argues that the trial court erred in failing to give a particular jury instruction to account for the fact that appellant was asleep at the time he was seen holding the bag. He also argues that his convictions were not supported by legally sufficient evidence and were against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment and sentence.

## Facts and Procedural History

{¶ 2} The following evidence was offered at trial. In the early morning hours of October 22, 2015, Ohio State Highway Patrol Trooper Anthony Martin was on patrol on Interstate 75. Around 3:25 a.m., while stopped in the median of the southbound lane near Wales Road in Wood County, Trooper Martin observed a red Jeep Cherokee speeding. As the Jeep passed the trooper's vehicle, the trooper observed the Jeep change lanes and "then slowed substantially under the speed limit," both of which Trooper Martin knew to be "potential criminal indicators." Trooper Martin activated his lights and initiated a traffic stop. Trooper Martin approached the passenger-side of the Jeep where he observed a male driver (later identified as Curtis Lee Britton III), a female passenger in the front seat (later identified as Layke Holmes) and another male in the back seat, who appeared to be sleeping (appellant). The trooper observed additional criminal indicators including the fact that the Jeep was a rental vehicle that was twelve days overdue to be

2.

returned and the person who rented the vehicle was not present. In addition, the driver (Britton) parked in a haphazard manner with the blinker still activated, suggesting that he was distracted. Trooper Martin also observed the strong presence of deodorizer indicating an effort to mask another scent, an unusual amount of trash in the Jeep, and the "overly nervous" behaviors of Britton and Holmes who were "visibly shaking" and "avoiding eye contact" with him. As Trooper Martin was observing these factors, appellant continued to sleep in the back seat.

{¶ 3} Trooper Martin suspected that the occupants of the car could be involved in criminal activity, and he requested assistance from Trooper Stroud who was patrolling the same area with a drug-sniffing dog. Evidence in the record established that illegal drug activity along I-75 is common and that drugs are often transported from the Detroit area to the southern states, and the money for those drugs then flows to the north. The use of rental vehicles for the drug trade is also common.

{¶ 4} When Trooper Stroud arrived, Trooper Martin was escorting the driver (Britton) to Martin's patrol car. Trooper Stroud approached the driver's side of the vehicle to advise the remaining occupants not to get out of the vehicle, while he and the dog walked the perimeter of the Jeep so that the dog could conduct a "sniff." Trooper Stroud observed "a male in the backseat [who] appeared to be sleeping." He testified, "[a]s I looked around the vehicle, I noticed in [appellant's] hands he was holding a plastic bag. I could see plastic coming out of his right fist." Although Trooper Stroud could not see the contents of the bag in appellant's "clenched" fist, he suspected that the bag was

3.

"drug packaging" which he has "seen over and over." Trooper Stroud asked Holmes to wake appellant, and he watched as Holmes turned to reach into the back seat. Trooper Stroud testified that although he sensed Holmes' deliberate attempt to obscure his view, he did see her "push [appellant's] right hand that was holding [the] bag * * * underneath his body." Appellant then "sat up," and Trooper Stroud could see that appellant's hands were "now empty." Stroud then directed appellant to sit "directly behind the driver's seat." As appellant moved, the bag "sitting exactly underneath where he was just laying" became visible.

{¶ 5} Trooper Martin returned to the Jeep, and he too "observed the pills" which "were packaged inside of a bag knotted on the top." The pills, a mixture of green capsules and blue pills, were lying "on the back passenger seat" of the Jeep. The pills were later tested in a police lab and identified as 138 oxycodone (blue) and 79 alprazolam, a.k.a. "Xanax" (green).

{¶ 6} After observing the pills, Trooper Martin escorted Holmes to his vehicle, where she joined Britton. Appellant was taken to the other patrol car. Dashcam audio from Martin's patrol car recorded the conversation between Holmes and Britton, during which Holmes can be heard saying, "[w]hen they pulled you out, I was sweatin the shit out of him, and he was like 'leave me alone,'" and "I didn't know where they was at or I would have grabbed them."

{¶ 7} Holmes, who entered into a Cooperation Agreement with the state, testified on behalf of the prosecution. Holmes testified that she had known appellant for about

4.

three months before their arrest and that the two had a "fling." On three previous occasions, appellant had asked Holmes to accompany him down to Tennessee, presumably for "illegally-related" purposes, but she had always declined, until that night. Soon after Holmes got into the Jeep, she fell asleep. She claimed to be "tipsy" from alcohol and Xanax. She awoke when they picked up Britton, whom she did not know. Once the trip resumed, with Britton driving and appellant in the back seat, she fell back to sleep. Holmes testified, "[a]fter we picked [Britton] up, I dozed off for a moment. [Appellant] woke me up and asked me to get in the back seat with him. I told him no. Went back to sleep. And next thing you know, [appellant] was telling * * * [me to] hand him some baggies, which I later recall I did. * * * I handed him some baggies and fell back asleep. And then next thing you know, [we] got pulled over." According to Holmes, the baggies were in an unopened pack, which she described as "those like - - Good Sense plastic bags."

{¶ 8} Appellant testified in his own defense. He disputed the state's case, that the purpose of the trip was drug-related, and he specifically denied any knowledge that drugs were in the vehicle that evening or how they wound up in his hand. He did not dispute Trooper Stroud's testimony that Stroud, in fact, observed a knotted plastic baggie in his clenched right hand, but he added that, "I was asleep, sir, so I don't know what [the trooper] observed."

{¶ 9} The Wood County Grand Jury indicted appellant on November 19, 2015 on five criminal counts: "Aggravated Possession of Drugs," in violation of R.C. 2925.11(A)

5.

and (C)(1)(c), a felony of the second degree (Count 1); "Aggravated Trafficking in Drugs," in violation of R.C. 2925.03(A)(2) and (C)(1)(d), a felony of the second degree (Count 2); "Possession of Drugs," in violation of R.C, 2925.11(A) and (C)(2)(b), a felony of the fourth degree (Count 3); "Trafficking in Drugs," in violation of R.C. 2925.03(A)(2) and (C)(2)(c), a felony of the fourth degree (Count 4); and "Possessing of Criminal Tools," in violation of R.C. 2923.24(A) and (C), a felony of the fifth degree (Count 5).

{¶ 10} Following a two day jury trial beginning on July 25, 2017, appellant was convicted on all counts. The state argued that Counts 1 and 2 were allied offenses of similar import that merged for purposes of sentencing, as were Counts 3 and 4. The state requested that the court sentence appellant as to Counts 2, 4 and 5. The court sentenced appellant to a mandatory term of 4 years in prison as to Count 2; 12 months as to Count 4, and 12 months as to Count 5. The court ordered that the terms be served concurrently. Appellant appealed, and through counsel, asserts three assignments of error for our review:

> FIRST ASSIGNMENT OF ERROR: The trial court erred in failing to give a requested jury instruction regarding Appellant being asleep.

> SECOND ASSIGNMENT OF ERROR: The trial court erred in denying Appellant's Rule 29 motion.

> THIRD ASSIGNMENT OF ERROR: The jury's verdict was against the manifest weight of the evidence presented at trial.

6.

{¶ 11} In his first assignment of error, appellant argues that the trial court erred in failing to provide the jury with Ohio Jury Instruction CR 417.07, entitled "Coma, blackout." The instruction provides,

1. DEFINED. Where a person commits an act while unconscious as in a (coma) (blackout) (convulsion) due to (heart failure) (disease) (sleep) (injury), such act is not a criminal offense even though it would be a crime if such act were the product of a person's (will) (volition).

2. CONCLUSION. If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the state of its burden of establishing by the required weight of the testimony (all elements of the crime charged) (any lesser included offense) [that the act was (purposely) (knowingly) committed].

3. STATUTE. Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's (will) (volition), are involuntary acts. R.C. 2901.21(C)(2).

{¶ 12} A trial court is "obligated to provide jury instructions that correctly and completely state the law" when those instructions are "warranted by the evidence presented in a case." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22. The question of whether a jury instruction is

7.

legally correct and factually warranted is subject to de novo review. *Id.* We begin our de novo review by examining the "blackout" affirmative defense. *See, e.g., State v. Ireland*, Slip Opinion No. 2018-Ohio-4494, ¶ 1 ("[B]lackout is an affirmative defense [and] requiring a defendant to provide this affirmative defense by a preponderance of the evidence does not violate the defendant's right to due process."). A criminal defendant is entitled to an instruction on an affirmative defense if he has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of the issue. *State v. Keahey*, 6th Dist. Erie No. E-13-009, 2014-Ohio-4729, ¶ 45, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of syllabus.

{¶ 13} Appellant asserts that he was asleep at the time of the stop and remained asleep "even when a baggie of pills was later seen in his hand." He claims, therefore, that the evidence established that he was "unconscious due to sleep" and that the "coma, blackout" jury instruction should have been given.

{¶ 14} We disagree. At trial, appellant did not claim to have "*commit[ed] an act while unconscious * * * that would have been a crime if such act were the product*" of his "will" or "volition," as set forth in Ohio Jury Instruction 417.07. (Emphasis added.) To the contrary, appellant's argument is that an act was committed *upon him*, namely the planting of drugs in his hand by another. Because there are no facts to suggest that appellant committed an involuntary act while unconscious, the sleep instruction does not apply. "Only those instructions which are applicable to the facts of the case should be

8.

given." *State v. Herrell,* 6th Dist. Lucas No. L-16-1173, 2017-Ohio-7109, ¶ 22. Moreover, although discussed in greater detail in response to appellant's second assignment of error, we note that the trial court did include a jury instruction on the term "knowingly" which reflected appellant's defense in this case, i.e., that drugs were unknowingly planted on his person for which he could not be held criminally liable.

{¶ 15} Based on the foregoing, we conclude that the trial court did not err by refusing to provide the jury with the "Coma; blackout" jury instruction. Appellant's first assignment of error is not well-taken.

### Sufficiency and Weight of the Evidence

{¶ 16} In appellant's second assignment of error, he argues that his convictions for drug possession and drug trafficking were based on insufficient evidence because the state failed to prove that he knowingly possessed the drugs. In his third assignment of error, he argues that the convictions are against the manifest weight of the evidence.

{¶ 17} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in the light most favorable to the

9.

state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997); *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 18} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386. In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks* at paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).

{¶ 19} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, quoting *Thompkins*. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20

10.

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed on manifest weight grounds only in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 20} Appellant argues that he was entitled to an acquittal as to his drug possession and trafficking convictions because the state failed to present legally sufficient evidence that he acted with the requisite mens rea. Appellant does not challenge the sufficiency of the evidence as to his possession of criminal tools conviction under R.C. 2923.24.

{¶ 21} The drug possession and trafficking statutes both require the state to show that appellant acted "knowingly." That is, R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Likewise, R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶ 22} R.C. 2901.22(B) defines "knowingly" as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When

knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 23} R.C. 2925.01(K) defines "possession" as "having control over a thing or substance" but possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶ 24} A court must look at all of the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance. *State v. Valiente-Mendoza*, 6th Dist. Wood No. WD-16-067, 2018-Ohio-3090, ¶ 64, citing *State v. Pippen*, 8th Dist. Cuyahoga No. 81630, 2003-Ohio-1736, ¶ 8. Moreover, possession may be actual or constructive. *State v. Fykes*, 6th Dist. Wood No. WD-07-072, 2009-Ohio-2926, ¶ 36, citing *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.). Actual possession occurs when the defendant has the items within his immediate physical control, whereas constructive possession occurs when the defendant is able to exercise dominion and control over an item, even if the individual does not have the item within his immediate physical possession. *Id.* "In order for constructive possession to exist, there must be evidence demonstrating that the defendant was conscious of the presence of the object. Although a defendant's mere proximity to an

12.

item is in itself insufficient to establish constructive possession, proximity to the item may constitute some evidence of constructive possession." *Id.*

{¶ 25} With the above framework in mind, we turn to appellant's argument that, "by being asleep," it could not be shown that he knowingly possessed and trafficked in drugs. Appellant "maintains that he had no knowledge of the pills being in the vehicle, much less in his own hands" and that "without knowledge of the pills [he] could not possess or traffic in said pills."

{¶ 26} Notwithstanding that appellant may have been asleep at the time drugs were discovered, evidence was offered at trial that, if believed, established his constructive, if not actual possession. Indeed, Trooper Martin testified to multiple criminal indicators, and Holmes verified that she assumed the trip was for an illegal purpose. Importantly, appellant asked Holmes to pass him plastic baggies, which are commonly used to package drugs. Such evidence, combined with the fact that appellant was seen in close proximity to the drugs (whether in his hand, underneath his torso, or lying on the back seat) establishes that appellant was conscious of the presence of drugs. Therefore, it may be said that appellant knowingly possessed them for purposes of satisfying the state's burden to present legally sufficient evidence in support of the drug possession and drug trafficking convictions. *Accord State v. Williamson,* 2d Dist. Montgomery No. 27147, 2017-Ohio-7098, ¶ 58 (Ample evidence supported conclusion that defendant knowingly possessed heroin and cocaine where police discovered bag of heroin capsules "sitting on the passenger seat of the car" and found an additional baggie

13.

of cocaine "in the middle console of the car, in the ashtray, just below the radio [both of which] would have been easily accessible to the driver.").

{¶ 27} Moreover, appellant's argument—that either Britton or Holmes "could have placed" the drugs into his hand—speaks to the weight, not the sufficiency of the evidence. In reviewing a sufficiency argument, we examine the evidence in the light most favorable to the state. Based upon the evidence described above, we find that a rational trier of fact could have found that appellant was conscious of the drugs inside the Jeep. Thus, we find that there was sufficient evidence that appellant knowingly possessed and trafficked in drugs.

{¶ 28} Appellant also argues that his convictions are against the manifest weight of the evidence. According to appellant, his night began about 8:00 p.m. in Pontiac, Michigan, at a friend's house, where he got drunk on tequila and smoked marijuana. Around 10:00 p.m., appellant asked if he could borrow the friend's car, that had been rented by someone else, to go buy a pack of cigarettes. The friend asked appellant to pick up a woman, Layke Holmes, while he was out. After picking up Holmes, whom appellant claimed never to have met, and buying cigarettes, appellant received a call from Britton, who "sounded sad" about a "family emergency" in "Tennessee." At trial, when asked, "[w]hat would make you want to take a friend's car, leave in the middle of the night while drunk, and go across state lines with a girl you didn't know," appellant replied that it was a "spur of the moment thing * * * to help out a friend who was in

14.

need."  Appellant also said that he did not really "think about all that stuff," like where in Tennessee they were going or whether he even had enough money to make the trip.

{¶ 29} Appellant argues that his version of events was more plausible than Holmes' whom he described as a "drug addict" who did not even know his "real name." A conviction is not against the manifest weight of the evidence, however, merely because the jury believed the prosecution testimony."  *State v. Dean*, 6th Dist. Lucas No. L-16-1301, 2018-Ohio-1740, ¶ 44, quoting *State v. Houston*, 10th Dist. Franklin No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds).  We find that this is not an exceptional case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered, and we further find that the jury's verdict was not against the manifest weight of the evidence.  Appellant's second and third assignments of error are not well-taken.

## Conclusion

{¶ 30} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                              JUDGE

Arlene Singer, J.

                                  _____
Thomas J. Osowik, J.                          JUDGE
CONCUR.

                                  _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.