**[Cite as *State v. Weemes*, 2020-Ohio-140.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-18-1243 |
| Appellee | Trial Court No. CR0201702414 |
| v. | |
| Megan Lynd Weemes | **DECISION AND JUDGMENT** |
| Appellant | Decided: January 17, 2020 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Clarissa A. Smith, for appellant.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, general trial division. After a jury found appellant, Megan Lynd Weemes, guilty of multiple drug charges and major drug offender specifications in Lucas County Common Pleas case Nos. CR0201702414 and CR0201703126, the trial court sentenced appellant to an aggregate prison term of 11 years. Finding no error, we affirm.

## I. Facts and Procedural Background

{¶ 2} During the months of February and March 2017, Toledo Police Vice Narcotics unit Detective Brooke Janowiecki conducted surveillance at 2820 Airport Highway, Apartment M, and observed activity indicative of drug trafficking. Detective Janowiecki observed Ronald Pitts, specifically, entering and exiting the apartment and meeting with numerous individuals, with some of these individuals stopped and found in possession of illicit drugs. She also followed Pitts on different occasions to a second residence at 1828 Dunham Street, noting Pitts took indirect routes as if avoiding surveillance.

{¶ 3} Based on her surveillance, Detective Janowiecki obtained a search warrant for Apartment M. On March 28, 2017, she and other officers executed the search warrant and found Pitts inside, on the couch. They discovered evidence of drug trafficking and took Pitts into custody. A woman, later identified as appellant, was observed leaving the apartment immediately prior to execution of the warrant but was not detained.

{¶ 4} Police conducted a thorough search, checking all potential hiding places. They emptied drawers and cupboards, dumped out food containers, and searched every room. Items seized in the search included 3.49 grams of crack cocaine, 275.34 grams of powder cocaine, 720.75 grams of marijuana, $7,144 in cash, a digital scale, and baking soda, a common mixing agent for cocaine.

{¶ 5} While Pitts was in custody, he made numerous phone calls from the jail to appellant and other individuals. In his calls, Pitts indicated to the others that he knew the

2.

jail recorded all calls. Following the search, Detective Janowiecki began reviewing the jail calls. Based on a review of these calls, Detective Janowiecki identified appellant as the female to whom Pitts was speaking, because appellant acknowledged she had just left the apartment before the search. Appellant told Pitts that police "took everything," which Detective Janowiecki believed was a reference to the drugs and cash seized in the search.

{¶ 6} Throughout the jail calls, Pitts repeatedly instructed appellant to "clean up" and "reach out" to other individuals who would "know what to do." Pitts also expressed confidence that appellant also knew what he wanted done, and appellant reassured Pitts that she would handle things. Appellant argued that she and Pitts were discussing the mess left behind after the search, but Detective Janowiecki testified that, considering the context for the conversations and repetition of the request to "clean up," she believed Pitts was asking appellant to remove contraband from his second residence on Dunham. In her prior surveillance of Pitts, Detective Janowiecki observed him, on numerous occasions, traveling between the apartment and Dunham residence, using various indirect routes as if trying to "ditch the tail." Based on that prior surveillance and the recordings of Pitts' jail calls, Detective Janowiecki obtained a second warrant for that location, and police executed the second warrant a few hours after first taking Pitts into custody.

{¶ 7} When police arrived at the Dunham residence, no one was home, but Detective Janowiecki observed a car drive towards the house, stop for a few seconds, then speed away. Upon entering the garage, police discovered a surveillance camera inside, facing several bags of salt. Inside the salt bags, police recovered a large amount

3.

of powder cocaine. The drugs were "measured out by size, and they were all heat-sealed in bags," indicating an intent to sell the drugs. In the basement, they recovered a large amount of marijuana. Based on analysis and testing, police seized over a kilo of powder cocaine and over a kilo of marijuana. Additionally, police seized a loaded handgun from the bedroom, digital scales, $16,859 in cash, a coin collection, and documents tying both Pitts and appellant to each other and to both Apartment M and the Dunham residence.

{¶ 8} After completing the second search, Detective Janowiecki returned to her office and listened to more of Pitts' jail calls with appellant. The conversations indicated that appellant had driven by the Dunham residence with Pitts' associates, while police were executing the second search warrant, and she instructed the others not to stop. Detective Janowiecki testified that appellant's comments to Pitts demonstrated she was aware of Pitts' operations. Appellant told Pitts she would stay away from both Apartment M and the Dunham residence until she knew what was going on. She also assured Pitts that she would "figure something out" and talk to Pitts' associates, at Pitts' urging. Significantly, Detective Janowiecki believed appellant knew what was going on because she assured Pitts, "I've got your back no matter what."

{¶ 9} Based on this second search, police filed additional charges against Pitts. Police also filed charges against appellant, but did not take her into custody until May 11, 2017. Appellant and Pitts were both arraigned in case No. CR0201702414, and the trial court released Pitts and appellant on bond pending trial.

4.

{¶ 10} A few months later, police received a neighbor complaint about drug activity at the Apartment M residence. Toledo Police Vice Narcotics unit Detective Justin Pritchard, who had assisted Detective Janowiecki in the first search, initiated an investigation based on the new complaint. After conducting surveillance, Detective Pritchard observed traffic between Apartment M and the next-door unit, Apartment L. He also observed coming and going traffic from the apartments, consistent with drug sales, and recovered evidence of drug sales from those locations through traffic stops of individuals leaving the parking lot. Detective Pritchard obtained a search warrant for both apartments, and on September 29, 2017, police executed the warrants for each apartment.

{¶ 11} Upon entering Apartment M, police discovered Pitts and appellant inside, along with a large amount of marijuana, inconsistent with personal use, in a shopping bag. Subsequent forensic analysis indicated 246.25 grams of marijuana in a plastic bag. In addition, police seized two digital scales containing cocaine residue, a case of sandwich bags described by Detective Pritchard as "more sandwich bags than I've ever seen at a residence," and $18,644 in cash, mostly in $20 bills, hidden throughout the apartment. Pitts also had a large amount of narcotics on his person, along with the key to Apartment L.

{¶ 12} The search of Apartment L revealed a metal trunk containing a very large quantity of powdered cocaine, a smaller bag of crack cocaine, and a plastic bag containing marijuana. In all, the drugs seized included 542.4 grams of powder cocaine,

5.

2.66 grams of marijuana, and 3.57 grams of crack cocaine. Police also found sandwich bags with the corners torn off, indicating use as packaging for drug sales, as well as a digital scale, a loaded handgun, and ammunition.

{¶ 13} Based on the September search, police filed additional charges against Pitts and appellant, and new charges against Reco Nelson, the resident of Apartment L, in case No. CR0201703126.

{¶ 14} Appellant was charged with the following:

{¶ 15} In case No. CR0201702414, the state charged appellant with two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(g), felonies of the first degree (Counts 1 and 3), two counts of possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(f), felonies of the first degree (Counts 2 and 4), one count of trafficking in marijuana, in violation of R.C. 2925.03(2) and (C)(3)(c), a felony of the fourth degree (Count 5); one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(2) and (C)(3)(d), a felony of the third degree (Count 6), and one count of possession of marijuana, in violation of R.C. 2925.11(A) and(C)(3)(d), a felony of the third degree (Count 7). Counts 1 through 4 included a major drug offender specification under R.C. 2941.1410.

{¶ 16} In case No. CR0201703126, the state charged appellant with one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(g), a felony of the first degree (Count 1), one count of possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree (Count 2), one count of trafficking

6.

in marijuana, in violation of R.C. 2925.03(A)(2) and (C)(3)(c), a felony of the fourth degree (Count 3), and one count of possession of marijuana, in violation of R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree (Count 4). Counts 1 and 2 included a major drug offender specification under R.C. 2941.1410.

{¶ 17} Appellant moved to suppress the evidence seized in the March 28, 2017 search of the Dunham address, arguing police lacked a substantial basis for issuance of a search warrant, and police did not act in good faith reliance upon the warrant. After hearing, the trial court denied the motion, and the matter proceeded to trial beginning October 15, 2018. Both cases, and all defendants, were joined for trial upon the state's motion, over the objection of Nelson and Pitts.[1]

{¶ 18} On October 19, 2018, appellant filed a motion requesting acquittal pursuant to Crim.R. 29, which the trial court denied. On October 22, 2018, the jury returned its verdict.

{¶ 19} In case No. CR0201702414, the jury returned a verdict of guilty against appellant as to all counts. The trial court noted the jury's finding, pursuant to R.C. 2925.03(C)(4)(g), that the major drug offender specification applied as to Counts 1 and 3. The state argued, without opposition, that Counts 1 and 2 merged, Counts 3 and 4 merged, Count 5 was not subject to merger, and Counts 6 and 7 merged, and elected to

---

[1] In its written opinion, granting joinder, the trial court noted that appellant "has not made any objection to the joinder of the cases for trial."

7.

proceed to sentence as to Counts 1, 3, 5, and 6. After applying merger, the trial court sentenced appellant to concurrent sentences, totaling 11 years in prison.

{¶ 20} In case No. CR0201703126, the jury found appellant not guilty of Count 2, possession of cocaine, but guilty of all remaining counts. The trial court noted the jury's finding, pursuant to R.C. 2925.03(C)(4)(g), that the major drug offender specification applied to Count 1. The state argued that Counts 3 and 4 merged, and elected to proceed to sentence as to Counts 1 and 3. After applying merger, the trial court sentenced appellant to concurrent sentences, totaling 11 years in prison. The trial court then ordered the sentences in each case to be served concurrent to each other, for an aggregate sentence of 11 years.

{¶ 21} On October 31, 2018, appellant filed her appeal of the verdict and sentence, and after the trial court denied her application for bond pending appeal, she filed a motion with this court for a stay of sentence and bond pending appeal pursuant to App.R. 8. On April 16, 2019, we denied appellant's application.[2]

---

[2] Pending the present appeal, the trial court stayed the related forfeiture proceedings filed against appellant: Lucas County Common Pleas case No. CI0201702218, *In re: Forfeiture of $18,503 in U.S. currency, assorted coins and collector type money,* transferred and consolidated with Lucas County Common Pleas case No. CR0201702414 and Lucas County Common Pleas case No. CI0201704320, *In re: Forfeiture of $18,644 in U.S. currency, assorted jewelry, 2006 Chevrolet Trailblazer VIN 1GNET13H062266319, 2002 Jeep Liberty VIN 1J4GK58K32W275965,* transferred and consolidated with Lucas County Common Pleas case No. CR0201703126.

8.

## II. Assignments of Error

{¶ 22} Appellant now asserts the following assignments of error in her appeal:

1. THE COURT ERRED WHEN IT DENIED THE DEFENSE'S MOTION TO SUPPRESS AND THUS FAILED TO SUPPRESS ANY AND ALL EVIDENCE SEIZED IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS GUARANTEED BY THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS [OF] THE U.S. CONSTITUTION.

2. THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL. THIS BECAUSE, EVEN IF THE EVIDENCE PRESENTED IN THE STATE'S CASE IN CHIEF VIEWED MOST FAVORABLY TO THE STATE, THE FACT IS THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION.

3. THE COURT ERRED WHEN IT DENIED BAIL PENDING APPEAL.

## III. Analysis

### A. Motion to Suppress

{¶ 23} In appellant's first assignment of error, she argues the trial court erred in failing to grant her motion to suppress. Our review of the trial court's ruling on the motion to suppress must be based on the totality of the circumstances. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 1.

{¶ 24} Our review of a ruling on a motion to suppress involves "a mixed question of law and fact." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "We accept the trial court's factual findings as long as they are supported by competent, credible evidence[,]" but independently determine whether the trial court's application of the law to those facts satisfied the applicable standard. *Belton* at ¶ 100, citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100; *Burnside* at ¶ 8.

{¶ 25} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution afford privacy protections in felony cases, and require search warrants to issue only upon a showing of probable cause. *Jones* at ¶ 11-12. In determining whether probable cause supports the issuance of a search warrant, we must examine the totality of the circumstances to ensure the magistrate had a substantial basis to conclude that there was "a fair probability that contraband or evidence of a crime will be found in a particular place." *Jones* at ¶ 13, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 26} Where, as in this case, the warrant was issued based solely on a supporting affidavit, the probable cause determination is based on the four corners of the affidavit. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 39. In reviewing that determination, we accord the trial court great deference, with doubtful or marginal cases resolved in favor of upholding the warrant. *Jones* at ¶ 14, quoting *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

10.

However, even where we find the issuing judge lacked a substantial basis for concluding there was probable cause to search the residence, we will nevertheless uphold the warrant if we find that law enforcement acted with objective good faith in executing the warrant, keeping within its scope. *George* at 330-331.

{¶ 27} At trial, appellant challenged the search warrant for the Dunham property. She argued that the issuing judge lacked a substantial basis for finding probable cause to permit the search of that property, based on deficiencies in the supporting affidavit. Because of these deficiencies, she argued that the good faith exception did not apply.[3]

{¶ 28} At the hearing on the various motions to suppress, appellant's counsel specifically narrowed the issue to only the Dunham property search warrant, stating:

And, Judge, as it relates to [appellant] and the challenges before the Court relating to potential disclosure of the identity of the confidential informant, those affidavits that are at issue regarding that do not identify [appellant]. There has not been a common filing concerning challenges by defendant Pitts nor defendant Nelson.

---

[3] Appellant's co-defendants, Pitts and Nelson, also filed motions to suppress in the trial court. Pitts challenged the search of Apartment M and the Dunham residence, and Nelson challenged the search of Apartment L. Each challenged the sufficiency of the supporting affidavits, but Pitts and Nelson also sought the identity of the confidential informant referenced within the affidavits. Pitts, joined by Nelson, argued that police fabricated a confidential informant, and sought the identity in order to prove the confidential informant never existed. Appellant did not join in these motions, and raised no challenge to any of the other searches.

11.

Counsel then clarified that appellant's only challenge was to the search of the Dunham residence, based on the sufficiency of the affidavit, stating:

> And, Judge, just to complete or correct the record. The motion I filed, which is being referenced, filed October 30, 2017, I attached only the affidavit in support of the Search Warrant for the 1828 Dunham Street address[.]
>
> * * *
>
> Which is the only search warrant that I have challenged on behalf of [appellant] relating to the March 28, 2017, events.

{¶ 29} On appeal, appellant challenges the other searches along with the Dunham property search, and argues the supporting affidavits relative to the search of Apartment M lacked particularity regarding surveillance and tips from the confidential informant. While appellant specifically did not challenge the veracity of the affidavit in support of the initial search of Apartment M in the trial court, appellant now questions the existence of the confidential informant. She also argues a *Brady* violation, based on Detective Janowiecki's failure to document her surveillance of Pitts in written reports, and the state's failure to disclose the identity of the confidential informant. In essence, appellant argues that the state withheld information, relative to the initial surveillance of Pitts, and that information would have been material in challenging the affidavit, proffered in support of the search warrant for Apartment M.

12.

{¶ 30} Appellant's claim of a *Brady* violation, used to challenge the search warrants, is inapt. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The evidence allegedly withheld, however, consists of reports and testimony of confidential informants, used by police to obtain the first search warrant. Therefore, appellant argues application of *Brady,* not based on evidence of guilt or punishment, but based on claimed falsities and omissions in the supporting affidavit for the search of Apartment M.

{¶ 31} A challenge to the veracity of statements used by police to obtain a search warrant is a *Franks* challenge, pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the United States Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request." *Id.* at 155-156.

{¶ 32} Here, appellant argues a *Brady* violation while articulating a *Franks* challenge, solely as it pertained to the warrant obtained for the search of Apartment M, a residence appellant specifically argued was not her residence. In the trial court, appellant

13.

limited her challenge to the search of her own residence, the Dunham property, which she shared with Pitts.

{¶ 33} The trial court considered the content of the supporting affidavit for the Dunham residence, and found the issuing judge had a substantial basis for concluding probable cause existed. Some key averments in the affidavit for this residence included the affiant's belief that Pitts was the primary occupant, based on the prior search of Apartment M that revealed mail identifying Pitts' address at the Dunham house and the lack of Pitts' belongings at Apartment M. The affiant also attested to observing, through surveillance, that Pitts spent his nights at the Dunham house. The affiant included information from the search of Apartment M, referencing the contraband found, and indicated that Pitts was in custody as a result of evidence obtained in that search. Considering jail calls and Pitts' requests to others to "clean up" his residence, the affiant indicated her belief that Pitts was attempting to remove and destroy evidence of his criminal enterprise from the Dunham residence.

{¶ 34} Appellant does not challenge the search of the Dunham residence on appeal, or identify any deficiency in the affidavit supporting this particular search warrant. Instead, the issue now raised by appellant, in her appeal, is the same issue specifically *not raised* before the trial court, the impropriety of the search of Apartment M, requiring exclusion of evidence found in that and subsequent searches as fruit of the

poisonous tree. While appellant, arguably, waived this issue for appeal,[4] she also never claimed to reside at Apartment M. Instead, appellant emphatically disclaimed any privacy interest in either Apartment M or Apartment L, and argued she was, at most, merely a witness to any criminal conduct. Because appellant never claimed to reside at Apartment M, she lacked standing to challenge the search of that property in the trial court. Appellant may not argue a privacy interest in another's residence, as "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997).

{¶ 35} Therefore, upon review of the record, and without any challenge relative to the Dunham warrant on appeal, we find that appellant failed to articulate any basis to merit reversal of the trial court's ruling on her own motion to suppress, regarding the Dunham residence. Furthermore, because appellant failed to assert any challenge to the other search warrants before the trial court, but instead, steadfastly disclaimed any privacy interest in Apartments L and M, she failed to preserve the issue for appeal, and demonstrated no standing to assert a challenge based on another's property interest had she preserved the issue. Accordingly, we find appellant's first assignment of error not well-taken.

---

[4] *See Columbus City School Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 549, 2015-Ohio-4837, 45 N.E.3d 968, ¶ 14 (If a party could have, but does not raise an issue before the trial court, that issue is generally waived).

**B. Sufficiency**

{¶ 36} In her second assignment of error, appellant argues that the trial court erred in not granting her Crim.R. 29 motion for acquittal. We review a denial of a Crim.R. 29 motion for acquittal based on the same standard used in reviewing the sufficiency of the evidence. *State v. Reyes*, 6th Dist. Wood No. WD-03-059, 2005-Ohio-2100, ¶ 21, citing *State v. Carter*, 72 Ohio St.3d 545, 554, 651 N.E.2d 965 (1995). "The test for sufficiency of the evidence requires a determination of whether the state has met its burden of production." (Citation omitted.) *State v. Zich*, 6th Dist. Lucas No. L-09-1184, 2011-Ohio-6505, ¶ 122. In applying this test, we must determine "whether the evidence submitted is legally sufficient to support all elements of the offense charged." *State v. Boyd*, 6th Dist. Ottawa No. OT-06-034, 2008-Ohio-1229, ¶ 23, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

{¶ 37} Appellant argues that, because the state had no direct evidence of her possession of drugs or her participation in Pitts' drug trade, the state presented insufficient evidence to support her conviction. Appellant further argues that the state failed to present evidence demonstrating her assistance in, or participation with, any illicit activity, and until the search of the Dunham property, police were unaware of her as a suspect in any crime.[5]

---

[5] While the assigned error concerned the sufficiency of the evidence and denial of her Rule 29 motion for acquittal, appellant cited to law applicable to the standard for determining whether a judgment was against the manifest weight of the evidence, without assigning any error based on manifest weight. As appellant limited her argument to

{¶ 38} Appellant was convicted of numerous counts of possession and trafficking, in both cocaine and marijuana, with many of the counts including a major drug offender specification. To prove appellant was guilty of possession of drugs in violation of R.C. 2925.11(A), the state must demonstrate that appellant "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or controlled substance analog." Possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Proof of trafficking in drugs, in violation of R.C. 2925.03(A)(2) requires evidence that appellant "prepare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d] a controlled substance or a controlled substance analog," with knowledge or reasonable cause to believe "that the controlled substance * * * is intended for sale or resale[.]"

{¶ 39} At trial, the state presented evidence of constructive possession and of complicity in the criminal conduct. The complicity statute, R.C. 2923.03(A)(2), provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." One who aids or abets is "prosecuted and punished as if [he or she] were a principal offender." R.C.

_____

sufficiency, and failed to argue a manifest weight assignment of error separately in her brief, as required under App.R. 16(A), we decline to address any error based on manifest weight of the evidence. *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).").

17.

2923.03(F). Furthermore, criminal intent may be "inferred from the circumstances surrounding the crime." *State v. McDermott*, 6th Dist. Lucas No. L-03-1110, 2005-Ohio-2095, ¶ 35, quoting *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.

{¶ 40} Appellant argues that the evidence demonstrated only presence near the drugs, with mere proximity insufficient to support the conviction for possession, and a lack of any participation in the illegal conduct fatal to the state's theory of complicity. At trial, however, Detective Janowiecki testified regarding appellant's occupation of both the Dunham property and Apartment M, with appellant charged based on her belongings at each location and "all of the jail calls" indicating her knowledge of the illegal enterprise and her assurance to Pitts that "she would reach out to other individuals and get things back up and running." Detective Pritchard, likewise, testified that the odor of narcotics was "significant" and "almost nauseating" in Apartment M at the time of the March search. He also indicated that various drug trafficking tools were in plain view in the apartment, and would have been visible to appellant prior to her departure, immediately preceding that search.

{¶ 41} Detective Pritchard, as lead in the September search, indicated he conducted an investigation from July to the date he executed the second set of search warrants. He described appellant's conduct, leaving Apartment M with Pitts and conducting brief meetings with other individuals, which, based on his training and experience, were consistent with drug activity. He also noted that appellant and Pitts

18.

appeared to treat Apartment M as their workplace, arriving each day as if reporting to a job, and then leaving for home after the work day was done. As to their work, he noted the enterprise appeared to employ a "triangle method," with drugs, cash, and sales each kept separate, in three different locations. Detective Pritchard explained the method:

> If you picture each point of the triangle as a location or a residence, the triangle method is designed to protect the traffickers from seizures of their money or seizures of their stash, which is usually their bulk quantities of their narcotics. It's where they have – their supply is where they go to re-up after they run out.

> The third point of the triangle would be what we refer to as a trap or the point of location of their sales to where the actual sales would be occurring, individuals would be showing up. That point of the triangle is the most susceptible to search warrants. Drug traffickers know that because they know that that's the residence of the location where, more people often than not, are aware of, including people going in and out and also people observing the traffic. It's got the most attention drawn to it. So they know that that location is the most susceptible to a search warrant. So in order to protect their assets, they make sure that they are not completely wiped out with a search warrant, so they still have their money and or their supply of narcotics.

19.

{¶ 42} Based on his observations, Detective Pritchard characterized the Dunham property, at the time of the March search, as the stash or supply house, with Apartment M the point of sale, or trap house. During the course of his investigation leading up to the September search, Detective Pritchard noted that Apartment M remained the trap house, with the supply stored in Apartment L. He observed appellant and Pitts move between the two apartments immediately preceding the arrival of foot traffic. On the date of the search, police found appellant and Pitts in Apartment M, and again, tools of the trade, including digital scales and packaging materials, were in plain view.

{¶ 43} Police seized drugs and cash from both locations. The search of Apartment M yielded almost 250 grams of marijuana and $18,644 in cash, mostly in $20 bills. The search of Apartment L yielded a large quantity of powdered cocaine – more than a half kilo, and smaller amounts of crack cocaine and marijuana, as well as a digital scale, sandwich bags without corners, a loaded handgun, and ammunition.

{¶ 44} Because no drugs were found within appellant's immediate physical control, the state argued appellant had constructive possession of the drugs to support her possession convictions. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his [or her] immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Proof of constructive possession requires "evidence demonstrating that the defendant was conscious of the presence of the object," with consideration of proximity to the drugs permissible as part of the totality of the evidence. *State v. Shelby*,

20.

135 N.E.3d 508, 2019-Ohio-1564, ¶ 24 (6th Dist.), citing *State v. Fykes,* 6th Dist. Wood No. WD-07-072, 2009-Ohio-2926, ¶ 13 (additional citations omitted.).

{¶ 45} In this case, the state presented more than evidence of presence, introducing circumstantial evidence of appellant's proximity to and awareness of the drugs, her ability to exert control over the drugs, and her active role in either directly selling the drugs, or as aid and support for Pitts in his trafficking enterprise. Therefore, considering the totality of the circumstantial evidence adduced at trial and the elements for the charged offenses, the state met its burden of production as to all offenses. The evidence against appellant demonstrated more than mere presence in proximity to Pitts' illicit enterprise, and the combined evidence, accordingly, could lead a reasonable jury to conclude that appellant possessed the drugs, cooperated with Pitts in the trafficking of cocaine and marijuana, and shared his criminal intent. Appellant's second assignment of error, therefore, is not well-taken.

### C. Appellate Bond

{¶ 46} In her third and final assignment of error, appellant argues the trial court erred in denying her request for release on bail, pending this appeal. Because there is no right to bail on appeal, we review the trial court's decision for an abuse of discretion. *Coleman v. McGettrick*, 2 Ohio St.2d 177, 179, 207 N.E.2d 552 (1965).

{¶ 47} In support of this claimed error, appellant makes no direct reference to any abuse of discretion, with the exception of arguing a "summary denial" of her request. Instead, appellant argues that her argument in support of bail pending appeal "was

21.

impressive, predicated on personal and family ties to the community, the absence of any substantial criminal record, a perfect performance while on bail pretrial, a place to stay, * * * a good job (of which the Court was aware), and * * * no use of narcotics." Appellant also argued her appeal was not frivolous, and suggested the state had an obligation to demonstrate a lack of merit in her appeal before the trial court could deny her request for bail.

{¶ 48} The law on this issue is well-settled.  "Prior to conviction, an accused is afforded the benefit of the presumption of innocence, the burden being upon the state to prove his [or her] guilt.  After conviction such presumption no longer exists; the accused has been found guilty, and the burden is then upon the convicted felon to prove such conviction erroneous." *Coleman* at 180.  A decision denying bail pending appeal, therefore, "is not a matter of right but a question resolved by an exercise of the sound discretion of the court." *Id.*  In reviewing a denial, moreover, the lack of a written opinion articulating specific grounds for such denial is not presumptively arbitrary, because we presume regularity in judicial proceedings lacking any showing to the contrary. *Id.*

{¶ 49} The authority permitting bail pending appeal, R.C. 2949.02(A) and 2953.09(A)(2)(a), provides that a court *may* suspend execution of the sentence pending appeal.  The trial court noted this authority, and also articulated "due consideration" in denying appellant's motion.  On April 16, 2019, we denied appellant's application for bail to this court, noting the numerous felony drug trafficking and possession offenses,

including five separate findings that she is a major drug offender, and the significant prison sentence. Accordingly, discerning no error in the trial court's decision on bail pending appeal, we find appellant's third assignment of error not well-taken.

## IV. Conclusion

{¶ 50} For the forgoing reasons, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.
_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
_____
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.