[Cite as *State v. Pritchard*, 2021-Ohio-28.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-20-1040

    Appellee                                  Trial Court No. CR0201902927

v.

Roberto Pritchard                           **DECISION AND JUDGMENT**

    Appellant                                 Decided:  January 8, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Roberto Pritchard, appeals the judgment of the Lucas County

Court of Common Pleas, following a jury trial, convicting him of one count of domestic

violence in violation of R.C. 2919.25(A), (D)(1) and (D)(3), a felony of the fourth degree.

For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On November 5, 2019, the Lucas County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), (D)(1) and (D)(3), a felony of the fourth degree. Appellant entered an initial plea of not guilty, and the matter proceeded to a jury trial.

{¶ 3} At the trial, the following evidence was presented. The victim, C.D., testified that she was in a relationship with appellant, and that they lived together in an apartment in Lucas County, Ohio. In the early morning hours of October 20, 2019, C.D. picked up appellant from his job, and he informed her that he had just been fired due to a random drug test following an accident. C.D. testified that she was angry at appellant because she felt like he was lying to her because she found the papers from when he was released from his job and they showed that he had "plenty of drugs in his system." C.D. stated that when she told appellant that she had found the papers, he lashed out at her. C.D. described that appellant choked her with both hands, threw her on the bed repeatedly, punched her in the arms, and smacked her in the face. After about 20 minutes of abuse, appellant left, taking C.D.'s car keys and phone.

{¶ 4} C.D. testified that she ran across the street and asked a stranger to use his phone. Instead of allowing her to use his phone, the stranger drove C.D. a few minutes down the street to her friend's house. There, C.D. called her mother. C.D.'s mother came and picked her up, and the two returned to C.D.'s apartment to gather her things.

2.

When they arrived, appellant was there, and he and C.D. argued again before C.D. packed up her things and left. C.D. has stayed with her mother since that day.

{¶ 5} C.D. testified that she called her property manager on the night of the incident to see if she could have appellant's name removed from the lease. The property manager informed her that appellant's name could not be removed without an order from a judge.

{¶ 6} Four days later, C.D. reported the incident to the police. C.D. testified that she would not have reported the domestic violence if appellant had not refused to leave the apartment. C.D. also testified that she delayed in reporting the incident because she was afraid that she would lose her new job due to all the time she would have to take off of work to go to court hearings. However, C.D.'s employer encouraged her to report the matter, and C.D. went to the police that same day. Photographs were taken by the police and entered into evidence depicting bruises on C.D.'s arms and neck, as well as a swollen lip.

{¶ 7} C.D.'s mother, C.M., also testified for the state. C.M. testified that she received a phone call from her daughter at around noon on October 20, 2019, asking C.M. to come pick her up. When C.M. picked up her daughter, she noticed that her daughter was distressed, crying, and had a busted lip. C.M. took her daughter back to the apartment to pick up her daughter's things, where they encountered appellant and further arguing ensued. C.M. testified that when they eventually returned to her home and things calmed down, she noticed the bruising to C.D.'s arms, back, and neck.

3.

{¶ 8} Following its presentation of evidence, and a stipulation that appellant had previously been convicted of domestic violence, the state rested. Appellant then moved for acquittal pursuant to Crim.R. 29, which the trial court denied. Thereafter, appellant testified in his own defense.

{¶ 9} Appellant testified that he did not lose his job on October 20, 2019, but that he and C.D. were in the process of breaking up because he felt that the relationship was becoming toxic and C.D. was being too negative around his daughter. Appellant testified that C.D. had previously put bleach in his water, pepper-sprayed him, hit him with her car twice, and stole some of his possessions.

{¶ 10} Appellant acknowledged that he had an argument with C.D. on October 20, 2019, but he insisted that he did not hit, choke, or slap her, and that he did not cause her injuries. Appellant further testified that when C.D. returned with her mother, that he did not notice any injuries on her at that time. As far as taking C.D.'s car and phone, appellant testified that he took C.D.'s car to put air in the tires because she asked him to, and when he left he accidently took her phone instead of his because they had identical phones.

{¶ 11} Following appellant's testimony, the defense rested. Appellant then renewed his Crim.R. 29 motion for acquittal, which the trial court again denied. The matter was then submitted to the jury, and the jury returned with a verdict of guilty. At sentencing, appellant was ordered to serve four years of community control.

4.

## II. Assignments of Error

{¶ 12} Appellant has timely appealed his judgment of conviction, and now asserts three assignments of error for our review:

> 1. The evidence presented at trial was insufficient to support a conviction for Domestic Violence.

> 2. The Jury's finding of guilty for Domestic Violence was against the manifest weight of the evidence.

> 3. The Trial Court erred when it failed to direct a verdict in favor of Appellant.

## III. Analysis

{¶ 13} Appellant's first assignment of error challenges the sufficiency of the state's evidence. Appellant's third assignment of error argues that the trial court erred in failing to grant his motion for an acquittal. Because these assignments of error present the same legal question, we will address them together. *See State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37 ("A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.").

{¶ 14} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} Here, appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant argues that the evidence supporting his conviction is insufficient because C.D.'s story defies logic and is not credible. However, "[i]n determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Shelby*, 2019-Ohio-1564, 135 N.E.3d 508, ¶ 18 (6th Dist.), citing *Jenks* at paragraph two of the syllabus. In this case, C.D. testified that appellant, whom she lived with, choked, punched, and slapped her causing a swollen lip and significant bruising to her arms and neck. When viewed in a light most favorable to the prosecution, we hold that this evidence is sufficient to support a conviction for domestic violence.

{¶ 16} Accordingly, appellant's first and third assignments of error are not well-taken.

{¶ 17} In his second assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. A claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In so doing, the appellate court,

6.

reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.*

{¶ 18} Upon our review of the record, we find that this is not the exceptional case in which the jury clearly lost its way and created a manifest miscarriage of justice. Essentially, this case presents competing versions of the events of October 20, 2019. C.D. testified that she and appellant got into an argument after appellant was fired from his job, and that appellant then choked, punched, and slapped her, before leaving with her car and phone. Appellant, on the other hand, testified that he did not lose his job, and that while he did get into an argument with C.D., he did not assault her in any way. He further testified that he took the car at C.D.'s request to put air in the tires, and accidentally grabbed her phone as he was leaving.

{¶ 19} Appellant argues that C.D.'s testimony is not credible because she stated that the fight started when he lied to her about the reason he was fired, but in her testimony, she testified that appellant told her he was fired for a failed drug test. Thus, there was no lie. In addition, appellant argues that her testimony is not credible because

7.

C.D. only reported the matter to the police after being informed that she could not remove appellant's name from the lease without a court order, and a domestic violence charge is a quick way to get such an order. Appellant also notes C.D.'s delay in reporting the incident as another reason to doubt her credibility. Finally, appellant asserts that C.D.'s testimony that she was afraid of appellant was belied by the fact that she returned to the apartment on multiple occasions to get her things, and during those visits talked with appellant.

{¶ 20} Sitting as the thirteenth juror, we find C.D.'s testimony to be more credible than appellant's. Although the initial cause of the October 20, 2019 argument is unclear from C.D.'s testimony, appellant did not dispute that an argument occurred. C.D. testified that appellant injured her during this argument, and her testimony is supported by the photographs depicting bruising to C.D.'s neck, and significant bruising to her arms. C.D.'s testimony is also supported by C.M.'s testimony that she observed the bruises and C.D.'s swollen lip. Furthermore, the fact that after appellant left with C.D.'s car, C.D. felt compelled to flee the apartment, and sought a ride from her mother to return and gather her things, leads to the conclusion that something traumatic occurred during the argument. Had C.D. simply asked appellant to put air in her car's tire, as appellant testified, it makes little sense that C.D. would feel the need to flee.

{¶ 21} As to appellant's arguments regarding C.D.'s motivation to report the domestic violence, and her delay in reporting the domestic violence, we find that those issues do not diminish her credibility. From her testimony, it is clear that C.D. was

8.

motivated, at least in part, to report the domestic violence in order to remove appellant from the lease. However, this does not mean that C.D. made a false accusation. To the contrary, the fact that C.D. did not report the domestic violence immediately, but only reported it after being encouraged by her employer to do so, bolsters her credibility in our minds. This, coupled with the evidence of the physical injuries that C.D. suffered, leads us to agree with the jury that appellant committed domestic violence against C.D. Therefore, we hold that appellant's conviction is not against the manifest weight of the evidence.

{¶ 22} Accordingly, appellant's second assignment of error is not well-taken.

### IV. Conclusion

{¶ 23} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                    JUDGE

Christine E. Mayle, J.            _____

Gene A. Zmuda, P.J.                                 JUDGE
CONCUR.

                                 _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.